OPINION
{¶ 1} Benjamin Radford appeals from his conviction in the Fairborn Municipal Court of operating a motor vehicle while under the influence of alcohol (second offense), pursuant to his no contest plea. The facts underlying this appeal are not seriously in dispute, the legal implications of those facts are.
 {¶ 2} On December 5, 2004, at 1:14 a.m., Sergeant Lori Landacre of the Ohio State Highway Patrol was following Defendant's truck northbound on State Route 4, a divided highway. Over the distance of approximately one half to three quarters of a mile, Landacre observed Radford's vehicle travel across the solid right edge line and come back several times and also weave within the lane. She also observed Radford's vehicle cross the center or "dash" line on one occasion. Radford's vehicle was not exceeding the speed limit. As of result of the observed lane violations, Sergeant Landacre activated her pursuit lights and stopped Radford's vehicle. Sgt. Landacre observed Radford in the driver's seat and noticed that Radford's breath "reeked" of alcohol. She also noted that Radford exhibited bloodshot, glassy eyes as well as thick-tongued speech. Landacre then requested that Radford exit his vehicle and while attempting to step away from the truck Radford lost his balance and reached out to his vehicle to regain control.
 {¶ 3} Sgt. Landacre then requested that Radford step behind her patrol car to perform a series of field sobriety tests. As Landacre began to administer the horizontal gaze nystagmus test, Radford said "I have to be honest with you, I've been drinking." (Mot. p. 12). Sgt. Landacre administered those tests in accordance with her NHTSA training. Landacre administered the HGN test and she testified at the pre-trial suppression hearing that she got "six clues off of it." (Mot. 12). Landacre said she explained the "walk and turn" test to Radford and had him perform it. She said he made it to three steps, then lost his balance, and told her "I can't do this test." (Mot. 13). Lastly, Landacre explained the one-legged stand test to Radford and asked him to perform it. She testified that Radford placed his foot down at step one and three and then said "I can't do this." Landacre said she then told Radford that he had too much to drink and she then placed him under arrest for driving under the influence of alcohol. (T. 14). Landacre testified she detected two "clues" on the final two sobriety tests which Radford did not complete. She testified the minimum number of clues indicating the driver is operating his vehicle while under the influence of alcohol is two for each test. (Mot. 15). Landacre said Radford admitted he had too much to drink and shouldn't have been driving, but that the passenger was worse off than he. (Mot. 14).
 {¶ 4} On cross-examination, at a pretrial motion hearing, Landacre said that Radford went completely left of the center line at one time but she admitted she did not include that observation in her report. (Mot. 22). She stated she only saw Radford cross the center or hash line once but "he was off the right edge several times." (Mot. 23). Landacre testified that the field sobriety tests were performed off camera because State Patrol procedure "says we are not to stand between vehicles." (Mot. 40). Landacre testified she performed the sobriety tests in accord with NHTSA standards but she did forget to tell Radford to watch his feet while he was doing the test. Landacre conceded that Radford pulled over immediately when Landacre activated her pursuit lights and had no difficulty retrieving his wallet and identification. (Mot. 35). Landacre admitted she did not ask whether Radford wore contacts before administering the HGN test. She also admitted she checked Radford for distinct nystagmus at maximum deviation before checking for the onset of nystagmus before 45 degrees which is not in accordance with NHTSA standards. (Mot. 47).
 {¶ 5} In his pretrial motion, Radford moved to suppress any statements he made to Landacre because he alleged they were the product of an illegal arrest and were also taken in violation of his Fifth Amendment rights. He also sought to exclude any testimony that he failed the sobriety tests because he alleged there was insufficient evidence to detain him for the administration of those tests. Lastly, Radford sought to exclude evidence that he refused to submit to a breath test because the State failed to establish probable cause for his arrest. In overruling the suppression motion, the magistrate found that Officer Landacre had reasonable suspicion to stop Radford's vehicle and to request that he perform field sobriety tests. The magistrate found that the sobriety tests were conducted in substantial compliance with the NHTSA manual because the variations were minor procedural ones. In support of his decision, the magistrate made specific reference to R.C.4511.19(D)(4)(b) which states that an officer may testify concerning the results of a field sobriety test administered in substantial compliance with testing standards.
 {¶ 6} In his first assignment of error, Radford contends the trial court erred in sustaining the magistrate's decision that Officer Landacre had a reasonable suspicion to stop him for operating his vehicle while under the influence.
 {¶ 7} Radford argues that the videotape from Landacre's patrol car camera demonstrates that at no time did his vehicle travel left of the lane marker nor cross the right berm line as testified to by Officer Landacre. He also argues there was no evidence that he engaged in erratic driving before he was stopped by Officer Landacre. He notes he did not brake his vehicle erratically nor exceed the speed limit and that he pulled his vehicle over immediately when Officer Landacre activated the pursuit lights of her cruiser. The State counters that Officer Landacre saw Radford cross the left lane marker once and the right berm line several times before she activated her vehicle camera.
 {¶ 8} Radford concedes that the credibility of Officer Landacre's testimony is primarily for resolution by the trial court. Landacre did explain that she first observed Radford's erratic driving when she was some six to eight car lengths away and needed to zoom her camera in to record the additional weaving by Radford. (Mot. 23). The propriety of an investigative stop must be viewed in light of the totality of the circumstances.United States v. Cortez (1981), 449 U.S. 411. We have reviewed the videotape admitted into evidence and we conclude that it demonstrates along with Officer Landacre's pre-tape observation "reasonable suspicion" to support the stopping of Radford's vehicle. The appellant's first assignment of error is Overruled.
 {¶ 9} In his second assignment, Radford argues that Officer Landacre did not have sufficient cause to detain him for the administration of field sobriety tests. We disagree. Landacre testified that Radford "reeked" of alcohol, had bloodshot eyes and thick-tongued speech. She also noticed that he briefly lost his balance as he exited the vehicle he was driving. (Mot. 11, 12). These observations by Officer Landacre provided a reasonable basis for her requiring Radford to perform the sobriety tests. The second assignment of error is Overruled as well.
 {¶ 10} In his third assignment, Radford contends the trial court erred in ruling that he waived his constitutional attack on R.C. 4511.19(D)(4)(b) and in also concluding that the statute did not violate the Modern Courts Amendment (MCA), Article IV, Section 5(B) of the Ohio Constitution.
 {¶ 11} Prior to the enactment of R.C. 4511.19(D)(4)(b), the Ohio Supreme Court held in State v. Homan (2000),89 Ohio St.3d 421, that in order for the results of field sobriety tests to serve as evidence of probable cause to arrest, such tests must be performed in strict compliance with the procedures promulgated by the National Highway Traffic Safety Administration. Subsequent toHoman's "strict compliance" requirement, the Ohio General Assembly enacted R.C. 4511.19(D)(4)(b) as part of Amended Substitute Senate Bill 163, effective April 9, 2003. The statute provides, in pertinent part, as follow:
 {¶ 12} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards of any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 13} "(i) The officer may testify concerning the results of the field sobriety test so administered;
 {¶ 14} "(ii) The prosecution may introduce the result of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding;
 {¶ 15} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under Rules of Evidence, the court shall admit the testing or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 16} The Ohio Supreme Court has acknowledged that pursuant to this statute, "the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial." Instead, an officer now may testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards. State v. Schmitt (2004),101 Ohio St.3d 79 at ¶ 9.
 {¶ 17} In enacting R.C. 4511.19(D)(4)(b), Radford argues the Ohio General Assembly violated the separation of powers doctrine set forth in Section 5(B), Article IV of the Ohio Constitution. By enacting R.C. 4511.19(D)(4)(b), the government's legislative branch altered the Ohio Rules of Evidence, which are the exclusive domain of the Ohio Supreme Court, representing the judicial branch. In Homan, he argues the Ohio Supreme Court applied and interpreted Evid.R. 702 to create a standard for the admissibility of field sobriety tests and, therefore, it is beyond the General Assembly's power to change this standard by statute.
 {¶ 18} Radford urges us to adopt the reasoning of Judge David Branstool in State v. Angle, Licking County Case No. 03-TRC-15417, wherein the court found that S.B. 163 was in conflict with the Ohio Supreme Court's interpretation of Evid.R. 702 as set forth in Homan and was therefore unconstitutional pursuant to the Modern Courts Amendment.
 {¶ 19} We find the decision rendered by Judge William Finnegan in State v. Nutter, 128 Ohio Misc.2d 24, 2004-Ohio 3143 more persuasive. In that case, Judge Finnegan noted that the Ohio Rules of Evidence are silent concerning the admissibility of field sobriety tests and because Homan is a common law rule it may be overruled by the legislature without affecting the MCA. The appellant's third assignment of error is Overruled.
 {¶ 20} In his fourth assignment, Radford contends that Officer Landacre did not have probable cause to arrest him for operating his motor vehicle while under the influence of alcohol. We disagree. It appears that the trial court implicitly took judicial notice of the requirements of the NHTSA manual when it found that Landacre administered the tests in substantial compliance with the manual requirements. We have previously noted that the trial court may in its discretion take judicial notice of the manual. State v. Stritch (Mar 25, 2005), Mont. App. CA 20759. We agree with the trial court that Landacre "substantially complied" with the NHTSA requirements in administering the sobriety tests. When Radford failed all three tests, coupled with Landacre's observations of Radford's pre-test conduct, she had probable cause to arrest him. The fourth assignment of error is also Overruled.
 {¶ 21} In his fifth assignment of error, Radford contends that the trial court imposed a sentence which was double the mandatory minimum sentence without providing him a jury trial. He contends he was entitled to a jury trial upon the issue of whether he had at least one prior conviction of OVI in the previous twenty years and whether he refused to undergo a chemical test after being arrested for OVI. The State argues that Radford cannot portray error in the court's sentence because the court was not required to impose the doubled mandatory minimum sentence and in any event the sentence imposed was within the bounds of R.C. 2929.22.
 {¶ 22} Radford's prior conviction is not an element of the offense charged. State v. Allen, 29 Ohio St.2d 45 (1971) and it is not a factual determination for which Radford is entitled to a jury trial. Apprendi v. New Jersey (2000), 530 U.S. 466.
 {¶ 23} Radford was not charged with a violation of R.C.4511.19(A)(2) which requires proof that the defendant operated a motor vehicle while under the influence of alcohol after being previously convicted of a second offense within 20 years and also refused to submit to a chemical test.
 {¶ 24} Radford was convicted of violating R.C.4511.19(A)(1)(a), having been previously convicted of a similar offense within six years. He was therefore subject to a maximum sentence of six months pursuant to R.C. § 4511.19(G)(1)(b)(i).
 {¶ 25} Under the foregoing statute, a trial court is directed to impose a mandatory jail term of ten days for a second DUI offense committed within six years. The statute also provides that "[t]he court may impose a jail term in addition to the ten-day mandatory jail term," provided that the cumulative term does not exceed six months. The statute does not require the trial court to make any particular findings in order to impose an additional jail term beyond ten days. Because the record before us does not include a sentencing transcript, we must presume that the trial court elected to impose a twenty-day jail term though the exercise of its discretion under R.C. § 4511.19(G)(1)(b)(i).
 {¶ 26} Accordingly, the fifth assignment of error is overruled. The judgment of the trial court is affirmed.
Wolff, J., and Glasser, J., concur.
(Hon. George Glasser, Retired from the Sixth Appellate District, Sitting by assignment of the Chief Justice of the Supreme Court of Ohio).