DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court following our decision and judgment entry of August 10, 2005, granting the motion of defendant-appellant, Kenneth R. Cook, Jr., to reopen his appeal from a judgment of the Perrysburg Municipal Court. That judgment of conviction and sentence was entered after appellant entered a plea of no contest to a charge of driving with a prohibited alcohol level.
 {¶ 2} The facts of this case were set forth in our decision and judgment entry of March 31, 2005, in which we affirmed appellant's conviction and sentence. See State v. Cook, 6th Dist. No. WD-04-029, 2005-Ohio-1550. For purposes of this reopening, however, we will restate them as follows.
 {¶ 3} In December 2003, appellant was charged with driving with a prohibited alcohol level ("DUI"), speeding and weaving. Appellant filed a combined motion in limine, to dismiss, and to suppress on the following grounds: (1) the officer had no lawful basis to stop him and no probable cause to arrest him; (2) he was coerced into submitting to alcohol testing; (3) the alcohol testing was not conducted in accordance with applicable statutes and regulations; (4) the officer obtained statements from him in violation of his Fifth and Sixth Amendment rights; and (5) the field sobriety tests were not conducted in strict compliance with applicable standards. Appellee, the state of Ohio, opposed the motions.
 {¶ 4} Following a hearing, the trial court issued a decision and judgment entry denying the motion to suppress. Regarding the field sobriety tests, the court held that the arresting officer, Officer Randall Baker, administered the horizontal gaze nystagmus test and the walk and turn test in strict compliance with the standards approved by the National Highway Traffic and Safety Administration ("NHTSA") and that probable cause to arrest appellant for DUI could have been based on the results of these tests alone. Nevertheless, the court further concluded that probable cause to arrest appellant was warranted under the totality of the circumstances given appellant's erratic driving, the odor of alcohol about his person, and Officer Baker's own observations of appellant's behavior, including appellant's performance on non-standardized tests. Regarding appellant's challenge to the BAC DataMaster test results, the court held that evidence admitted at the hearing demonstrated that the machine was in proper working order when the test was administered to appellant. After the lower court denied the motion to suppress, appellant pled no contest to and was convicted of the DUI charge.
 {¶ 5} Appellant subsequently appealed his conviction and sentence to this court in which he raised four assignments of error challenging various aspects of the trial court's denial of his motion to suppress. Under his first assignment of error, appellant challenged the trial court's admission of State's Exhibit 1 into evidence. That exhibit is a packet of documents certifying that the breath test machine (the BAC DataMaster) was functioning properly and that the officer performing the test was certified to do so. The packet also contained appellant's breath test results. The entire packet was accompanied by the affidavit of Detective Franklin Shinaver, who averred that the records were true copies of documents made and kept in the ordinary course of business and were public records. Appellant argued that the lower court erred in admitting State's Exhibit 1 into evidence because admitting such evidence without live testimony violated his rights under the confrontation clause of the Sixth andFourteenth Amendments to the United States Constitution and because the affidavit was not admissible under the Ohio Rules of Evidence. In our review of this assignment of error, we rejected appellant's arguments and held that the exhibit was admissible. Appellant also raised three additional assignments of error: that the state failed to introduce evidence that the breath test was properly conducted or that the machine had its calibration properly checked as required by Department of Health requirements; and that the state failed to establish probable cause to arrest appellant for driving under the influence of alcohol; and that the court erred in finding probable cause to believe that appellant was operating a vehicle under the influence of alcohol. Because the remaining assignments of error were dependent upon the transcript from the hearing on the motion to suppress for resolution, and because appellant failed to file a transcript from that hearing, we presumed the regularity of the proceedings below, rejected the three assignments of error and affirmed the trial court's denial of appellant's motion to suppress.
 {¶ 6} In a decision and judgment entry of August 10, 2005, we granted appellant's motion to reopen his appeal for the purpose of considering the original second, third and fourth assignments of error. Appellant filed the transcript from the suppression hearing and now articulates his assignments of error as follows:
 {¶ 7} "Error I. The court committed substantial prejudicial error by finding that the breath testing machine was properly checked for calibration.
 {¶ 8} "Error II. The state failed to establish probable cause to arrest the defendant for driving under the influence of alcohol."
 {¶ 9} We will first address the second assignment of error in which appellant asserts that the state failed to establish that Officer Randall Baker had probable cause to arrest him for driving under the influence of alcohol and, as such, the lower court erred in denying his motion to suppress.
 {¶ 10} The law applicable to a motion to suppress is as follows. A motion to suppress must provide a prosecutor with notice of the basis for the challenge. Xenia v. Wallace (1988),37 Ohio St.3d 216, paragraph one of the syllabus. However, the basis need not be set forth with minute detail, only with sufficient particularity to put the prosecution on notice of the nature of the challenge. State v. Shindler (1994),70 Ohio St.3d 54, 57-58. Once a defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved.State v. Johnson (2000), 137 Ohio App.3d 847, 851, citingState v. Plummer (1986), 22 Ohio St.3d 292, 294.
 {¶ 11} When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein
(1991), 73 Ohio App.3d 486, 488.
 {¶ 12} In support of his assertion that Officer Baker lacked probable cause to arrest him for DUI, appellant contends that Officer Baker relied on two non-standardized field sobriety tests in determining appellant's level of intoxication and that the state failed to establish that the standardized field sobriety tests that Officer Baker administered to him were conducted in compliance with the NHTSA standards. As such, appellant asserts that the tests could not be relied upon as a basis for establishing probable cause to arrest him for DUI.
 {¶ 13} In State v. Homan (2000), 89 Ohio St.3d 421, at paragraph one of the syllabus, the Supreme Court of Ohio held "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Subsequently, by amending R.C.4511.19(D)(4), the General Assembly mandated a "substantial compliance" standard for the admission of field sobriety test results and their use as evidence of probable cause. The Supreme Court of Ohio has acknowledged that "substantial compliance" is now the standard. State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, at ¶ 9.
 {¶ 14} At the hearing on the motion to suppress, Officer Baker of the Rossford Police Department testified as follows. On December 4, 2003, at approximately 3:30 a.m., he was on standard patrol on I-75 in Wood County, Ohio when he observed a car traveling southbound at a high rate of speed. He then activated his radar unit and followed the car for approximately one-half to three-quarters of a mile. The radar unit indicated that the car Officer Baker was following was traveling at 77 m.p.h. in a 65 m.p.h. zone. Also over that distance, Officer Baker saw the car weave within its lane three times. Officer Baker then activated his overhead lights and pulled over the vehicle. Officer Baker approached the driver's side of the car and asked the driver, appellant, for his driver's license. As he spoke to appellant, Officer Baker noticed an odor of alcohol about appellant's person and appellant admitted that he had been drinking. While appellant remained seated in the car, Officer Baker conducted an initial horizontal gaze nystagmus ("HGN") test on him, which indicated that appellant was under the influence of alcohol. Officer Baker then removed appellant from the vehicle and readministered the HGN test while appellant was standing straight up with his head looking straight forward. Officer Baker testified that he administered the test twice on each eye, that he instructed appellant to watch his pen as he moved it in front of his eyes and that he watched appellant's eyes as appellant tried to track the pen. Officer Baker stated that in administering the test, he observed appellant's eyes drifting, that here was a lack of smooth pursuit, and that they demonstrated a nystagmus before reaching the 45 degree mark. Officer Baker also administered the portion of the test dealing with the nystagmus at maximum deviation. He testified that appellant registered all six clues on the HGN test and that based on his training and experience, he believed that appellant was under the influence of alcohol at the time he was detained.
 {¶ 15} Officer Baker also asked appellant to perform the walk and turn test. Officer Baker told appellant to imagine a line on the road, explained how to do the test and demonstrated the test. In performing this test, appellant went off balance when pivoting and raised his arms from his sides six inches. The impaired driver report that Officer Baker completed to document appellant's performance of the standardized tests also indicates that appellant did not touch his heel to his toe and that he stepped off of the line while walking. He did not ask appellant to perform the one legged stand test after learning that appellant had a knee problem. Finally, Officer Baker administered two non-standardized field sobriety tests, the alphabet test and the finger test. He asked appellant to recite the alphabet from A to Z. Three times, appellant stopped at the letter W and could not continue. Officer Baker demonstrated the finger test for appellant but appellant could not pass the test. Officer Baker then placed appellant under arrest for operating a motor vehicle while under the influence of alcohol.
 {¶ 16} Officer Baker testified that he was trained in alcohol detection at the Toledo Police Academy as well as through other courses and that in administering the field sobriety tests to appellant, he complied with those training requirements. Officer Baker further testified that the Alcohol Detention Apprehension and Prosecution ("ADAP") manual under which he was trained was consistent with the NHTSA manual. Officer Baker, however, never testified as to the NHTSA requirements, or for that matter the ADAP requirements, for the field sobriety tests that he administered, and neither manual was admitted into evidence at the hearing below. Nevertheless, during Officer Baker's testimony, appellant's counsel asked the court to take judicial notice of the NHTSA manual. After discussing the issue with the parties, the court stated that it needed to research the issue.
 {¶ 17} In his decision and judgment entry ruling on appellant's motion to suppress, the lower court determined that Officer Baker administered the HGN and walk and turn tests in strict compliance with the NHTSA testing methods. It therefore appears that the trial court took judicial notice of the requirements of the NHTSA manual. The Ohio Second District Court of Appeals has recognized that trial court's may take judicial notice of the NHTSA manual. In State v. Stritch, 2d Dist. No. 20759, 2005-Ohio-1376, at ¶ 16, the court held:
 {¶ 18} "Upon review, we now agree that a trial court may take judicial notice of the NHTSA standards governing the administration of field sobriety tests, including the HGN test. In [State v.] Sheppard [2d Dist. No. 2001-CA-34, 2002-Ohio-1817], we recognized that the applicable testing procedures in Ohio are set forth in the DWI Detection Standardized Field Sobriety Testing Student Manual published by NHTSA. These standards are not subject to reasonable dispute because they are capable of accurate and ready determination by reference to the NHTSA manual itself, a source whose accuracy cannot be questioned given its status as the seminal authority in this area. As a result, NHTSA standards governing the administration of the HGN test are subject to judicial notice under Evid.R. 201(B)."
 {¶ 19} See, also, State v. Knox, 2d Dist. No. 2005-CA-74,2006-Ohio-3039; State v. Radford, 2d Dist. No. 2005-CA-58,2006-Ohio-1610.
 {¶ 20} This case differs from our earlier decision in Statev. Nickelson (July 20, 2001), 6th Dist. No. H-00-036, in which we found that field sobriety tests should have been suppressed. In that case, the state introduced testimony of officers as to which tests were conducted and how they were conducted but it did not introduce any evidence to prove that the tests were conducted in a standardized manner as provided by the NHTSA, no witness testified as to those guidelines, and the manual itself was not admitted. Similarly, in State v. Purdy, 6th Dist. No. H-04-008,2004-Ohio-7069, we held that where an officer only testified that the field sobriety tests were conducted in accordance with his training, and the manual was not admitted into evidence to document the NHTSA guidelines, the results of the field sobriety tests should have been suppressed. The courts, however, in those cases neither expressly nor impliedly took judicial notice of the NHTSA guidelines.
 {¶ 21} In the present case, Officer Baker testified that he administered the standardized field sobriety tests in conformance with his training, that the manual under which he was trained was consistent with the NHTSA manual and the trial court appears to have taken judicial notice of the manual. Under these circumstances, we find that the court did not err in finding that Officer Baker substantially complied with the NHTSA requirements in administering the field sobriety tests and did not err in relying on the results of those tests to find that Officer Baker had probable cause to arrest appellant for DUI.
 {¶ 22} Assuming arguendo that the court should have suppressed the results of the field sobriety tests, we further find that Officer Baker had probable cause to arrest appellant for DUI. In Beck v. Ohio (1964), 379 U.S. 89, 91, the United States Supreme Court held that probable cause for a warrantless arrest is based on "* * * whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed the offense." In making this determination, the court in Homan,
supra at 427, noted: "[w]hile field sobriety tests must be administered in strict [now substantial] compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of strict [now substantial] compliance."
 {¶ 23} Officer Baker testified that his decision to arrest appellant was based on all of the facts and circumstances present at that time. Those facts included that appellant was driving erratically (speeding and weaving within his lane), that appellant had an odor of alcohol about his person and admitted to drinking, and Officer Baker's general observations of appellant as appellant attempted to perform the field sobriety tests administered. Based the facts and circumstances surrounding appellant's arrest, we conclude that Officer Baker had probable cause to arrest him for DUI and the second assignment of error is not well-taken.
 {¶ 24} In his first assignment of error, appellant challenges the validity of the breath test administered to him after he was arrested, and the trial court's denial of his motion to suppress the results of that test. Appellant first asserts that the documents admitted into evidence at the hearing below failed to establish that the BAC DataMaster was properly checked for calibration as required by the Ohio Department of Health Regulations. More specifically, appellant asserts that State's Exhibit 1 was not certified by proper affidavit or attested to by a representative of the Ohio Department of Health and therefore should not have been given any weight by the trial court in its determination as to whether the state's chemical tests complied with the methods approved by the Director of Health.
 {¶ 25} Initially, we note that in our prior decision of March 31, 2005, we already determined that admitting State's Exhibit 1 did not violate appellant's right to confront witnesses against him and that Detective Shinaver's affidavit was admissible to authenticate the documents as business records. To the extent that appellant raises these issues again, we find the argument not well taken under the doctrine of res judicata and note that in granting appellant's motion to reopen his appeal, we only authorized him to raise certain issues not previously addressed.
 {¶ 26} Nevertheless, it is noteworthy that we recently addressed this same issue in the case of State v. Stoner, 6th Dist. No. OT-05-042, 2006-Ohio-2122, in which the appellant argued that the calibration solution certificate for the batch and bottle was not certified and not authenticated by anyone from the Department of Health as a true copy and therefore was inadmissible. In rejecting the appellant's argument we held, ¶ 31:
 {¶ 27} "Pursuant to the decision of the Supreme Court of Ohio in State v. Edwards, 107 Ohio St.3d 169, 2005-Ohio-6180, judicial officials at suppression hearings may rely on hearsay and other evidence to determine whether alcohol test results were obtained in compliance with methods approved by the Director of Health, even though that evidence would not be admissible at trial. See also Maumee v. Weisner (1999), 87 Ohio St.3d 295,298, 1999-Ohio-69; United States v. Raddatz (1980),447 U.S. 667, 679; United States v. Matlock (1974), 415 U.S. 164,173-174. Therefore, the trial court in this case did not err by admitting into evidence the test-solution certificate to determine whether the state's chemical results complied with the director's regulations even if the Rules of Evidence governing authentication and hearsay would preclude admission of the certificate at trial."
 {¶ 28} Appellant further argues that the results of the BAC DataMaster test administered to him should not have been admitted into evidence at the hearing below and relied upon by the lower court because the state failed to prove that it substantially complied with the regulations governing the administration of such tests.
 {¶ 29} It is well-established that before the results of a breathalyzer test can be admitted into evidence to establish alcohol concentration under a R.C. 4511.19 prosecution, the state must show that it substantially complied with the methods approved by the Ohio Director of Health ("ODH") in the administration of the test. Defiance v. Kretz (1991),60 Ohio St.3d 1, 3; Plummer, supra. Those methods approved by the ODH are set forth in the Ohio Administrative Code. Once the state introduces evidence of substantial compliance with the applicable regulations, the burden shifts to the defendant to show that he was prejudiced by anything less than complete technical compliance with the challenged regulation. Plummer, supra.
 {¶ 30} Officer Baker testified at the hearing below that after he arrested appellant he took him to the police station and administered a breath alcohol test using a BAC DataMaster. Officer Baker is a certified senior operator of the instrument and stated that he has used it at least 100 times. During Officer Baker's testimony, the state introduced State's Exhibit 1, the packet of documents discussed above which we determined in our earlier decision was admissible. Officer Baker testified that Officer Franklin Shinaver is the officer in charge of the BAC DataMaster and the records; that the logs are kept in the regular course of business by the Rossford Police Department; that pursuant to the logs, the machine was calibrated on November 28, 2003; that on December 4, 2003, a breath test was administered to appellant using that machine which produced a reading of .105; the test was given within two hours of appellant's arrest; that prior to administering the test, Officer Baker observed appellant for 20 minutes; that on December 5, 2003, the machine was again calibrated using the same batch solution as was used on November 28, 2003; that the calibrations on both November 28 and December 5 were within the range of plus or minus .005 grams per 210 liters of the target value for that instrument check solution; that the calibration solutions are stored in a refrigerator; and that when he administered the test to appellant there was no indication that the machine was functioning incorrectly. On cross-examination, Officer Baker stated that he was not present when the calibrations were conducted.
 {¶ 31} Appellant first asserts that the state failed to prove that the results of all tests, maintenance records and calibration checks documents were kept by the Rossford Police Department for a period of three years as required by Ohio Adm. Code 3701-53-02(C) and 3701-53-01(A). The record contains the affidavit of Detective Franklin Shinaver, a sergeant with the Rossford Police Department, which was attached to and authenticated State's Exhibit 1. The affidavit reads in relevant part:
 {¶ 32} "I, Franklin D. Shinaver, hereby certify that * * * I am the custodian of all the records relating to the BAC DataMaster and the operation thereof, and that I am authorized to certify and do hereby certify that the attached are true copies of the log book kept for the BAC DataMaster operated at the Rossford Police Department pursuant to the rules and regulations of the Ohio Department of Health. Other attached records and documents are routinely made and kept pursuant to and required by the rules and regulations of the Ohio Department of Health and/or requirements of the Rossford Prosecutor's Office and/or the Rossford Police Department and are maintained at the Rossford Police Department in Rossford, Wood County, Ohio."
 {¶ 33} By attesting that the Rossford Police Department routinely keeps and maintains the log books for the BAC DataMaster as required by the rules and regulations of the Ohio Department of Health, Shinaver essentially asserted that the records were maintained for three years as required by the Ohio Administrative Code. As such, the state introduced evidence that it had substantially complied with the applicable regulations and the burden shifted to appellant to show that he was prejudiced by anything less that strict compliance. He did not do so.
 {¶ 34} Appellant next asserts that the state failed to introduce evidence at the hearing below that a copy of the operator's manual for the BAC DataMaster was kept at the testing location as required by Ohio Adm. Code 3701-53-01(B). Although appellant's motion to suppress sufficiently raised a number of issues regarding compliance with alcohol testing to warrant a hearing, see Purdy, supra, including that the "machine was not properly installed pursuant to the owners and operators manual for the machine and with proper documentation maintained as required by OAC 3702-53-06(A) and (B)," it did not allege that the state failed to keep an operator's manual at the testing location. Ohio Adm. Code 3702-53-06(A) and (B) address chain of custody issues and the requirement that laboratories successfully complete a national proficiency testing program. It is well-settled that "[t]he prosecution is not required * * * to affirmatively demonstrate substantial compliance with every ODH regulation as a precondition to admitting alcohol concentration results. * * * The prosecution's burden arises when the defendant has placed the operator's compliance with a particular regulation at issue." State v. Luhrs (1990), 69 Ohio App.3d 731, 736
(citations omitted). Accordingly, appellant has waived his right to challenge the admission of the BAC test results on this ground.
 {¶ 35} Appellant further asserts that there was no evidence introduced to establish that the air tested by the police was "deep lung (alveolar) air" as required by Ohio Adm. Code3701-53-02(C). That regulation reads:
 {¶ 36} "Breath samples of deep lung (alveolar) air shall be analyzed for purposes of determining whether a person has a prohibited breath alcohol concentration with instruments approved under paragraphs (A) and (B) of this rule. Breath samples shall be analyzed according to the operational checklist for the instrument being used and checklist forms recording the results of subject tests shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code. The results shall be recorded on forms prescribed by the director of health."
 {¶ 37} The record reveals that appellant's breath sample was analyzed according to the operational checklist for the BAC DataMaster and that the form used contains the seal of the Ohio Department of Health. Moreover, Officer Baker testified that when administering the test to appellant, there was no indication that the machine was functioning incorrectly. In State v. Douglas,
4th Dist. No. C-030897, 2004-Ohio-5726, at ¶ 9, the court discussed the requirement of "deep lung" air as follows:
 {¶ 38} "As the Ohio Supreme Court noted in State v. Steele
[(1977), 52 Ohio St.2d 187, 190], the reason for waiting twenty minutes before testing a suspect is to eliminate the possibility that the test result is a product of anything other than the suspect's deep lung breath. Because the accuracy of the test results can be adversely affected if the suspect either ingests material orally, like food or drink, or regurgitates material internally, by belching or vomiting, the suspect must be observed for twenty minutes to verify that no external or internal material may cause a false reading."
 {¶ 39} Where, as in the present case, the testing officer waits the mandatory time period before administering the breath test, observes the suspect during that time period, and receives no indication that the breath testing device was malfunctioning, the trial court does not err in concluding that the state substantially complied with the ODH regulation requiring testing of deep lung breath. See State v. Moss (Mar. 15, 1996), 4th Dist. No. 95CA2089.
 {¶ 40} Finally, appellant asserts that the state produced no evidence that the particular bottle of calibration solution used to run calibration checks on the BAC DataMaster at issue was kept refrigerated when not in use as required by Ohio Adm. Code3701-53-04(C). To the contrary, Officer Baker specifically testified that the calibration solutions are stored in the refrigerator. The state therefore demonstrated substantial compliance with Ohio Adm. Code 3701-53-04(C).
 {¶ 41} Accordingly, the state substantially complied with the methods approved by the ODH in the administration of the breathalyzer test and the trial court did not err in denying appellant's motion to suppress the results of that test. The first assignment of error is not well-taken.
 {¶ 42} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Perrysburg Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Parish, J., Concur.