OPINION
{¶ 1} Plaintiff-appellant, City of Columbus, appeals from a decision of the Franklin County Municipal Court suppressing evidence obtained after the arrest of defendant-appellee, Jacob A. Weber. For the following reasons, we reverse and remand.
 {¶ 2} At approximately 2 a.m., on March 24, 2006, Columbus Police Officer Thomas Casimir stopped the motor vehicle that defendant was driving because its rear license plate light was out. Before the vehicle was stopped, there was no sign of impaired driving. Officer Casimir requested the presence of his sergeant, who arrived at the scene *Page 2 
of the stop. When Officer Casimir approached defendant, he asked for his license, registration, and proof of insurance. Defendant was very polite and courteous and produced those items for the officer. Defendant's speech was not slurred. Two females were in the vehicle with defendant. While defendant was still in the vehicle, Officer Casimir noticed a strong odor of an alcoholic beverage emanating from inside the vehicle. He also noticed that defendant's eyes were glassy and bloodshot. He did not ask defendant whether he had been consuming any alcohol or drugs.
 {¶ 3} Officer Casimir asked defendant to step out of the vehicle. Defendant had no trouble getting out of the vehicle, and the officer continued to observe his eyes as being glassy and bloodshot and notice the strong odor of an alcoholic beverage about his breath. Defendant told the officer that he was 19 years old. Officer Casimir also knew that he was 19 years old based on the information on defendant's license. Officer Casimir administered multiple standardized field sobriety tests. Specifically, he administered the "horizontal gaze nystagmus" ("HGN"), "walk-and-turn," and "one-leg stand" tests in front of his sergeant's cruiser, which was equipped with a video camera. After administering the field sobriety tests, Officer Casimir arrested defendant for operating a motor vehicle under the influence. Officer Casimir transported defendant to police headquarters, where defendant took a breath test that indicated a 0.187 breath alcohol content per 210 liters of breath.
 {¶ 4} Defendant was charged with one count of operating a vehicle under the influence of alcohol, in violation of Columbus City Codes ("C.C.") 2133.01(A)(1), and one *Page 3 
count of operating a vehicle with a concentration of 0.17 of one gram or more by weight of alcohol per 210 liters of his breath, in violation of C.C. 2133.01(A)(2).[1]
 {¶ 5} On June 2, 2006, defendant filed a motion to suppress evidence obtained in connection with his arrest on March 24, 2006. In August 2006, a hearing was held on defendant's motion to suppress, during which the facts, as outlined above, were set forth. The trial court found that the walk-and-turn and one-leg-stand field sobriety tests were administered in substantial compliance with National Highway Traffic and Safety Administration ("NHTSA") standards. However, the trial court found that the officer did not substantially comply with NHTSA standards when he administered the HGN test. Consequently, the trial court did not consider the results of the HGN test for purposes of determining whether probable cause existed for defendant's arrest. The trial court concluded that, based upon the totality of the circumstances, probable cause did not exist for the arrest. Accordingly, the trial court suppressed the results of the alcohol concentration breath test.
 {¶ 6} Pursuant to R.C. 2945.67(A), Crim.R. 12(K), and App.R. 4(B)(4), plaintiff appeals from the decision of the trial court granting the motion to suppress. In this appeal, plaintiff sets forth the following single assignment of error:
 The trial court erred, as a matter of law, in finding that there was insufficient evidence to support a finding of probable cause for operating a vehicle while under the influence where the suspect was underage, had a strong odor of alcohol on his breath, had bloodshot and glassy eyes, and failed a standardized field sobriety test. *Page 4 
 {¶ 7} An appellate court's standard of review on a motion to suppress is twofold. State v. Reedy, Franklin App. No. 05AP-501, 2006-Ohio-1212, at ¶ 5, citing State v. Lloyd (1998), 126 Ohio App.3d 95, 100-101. Because the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence.Reedy, at ¶ 5, citing State v. Klein (1991), 73 Ohio App.3d 486, 488. Upon accepting those facts as true, an appellate court must independently determine, as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard. Reedy, at ¶ 5, citing State v. Claytor (1993),85 Ohio App.3d 623, 627.
 {¶ 8} After making a valid investigative stop, an officer may investigate a suspect for impaired driving if reasonable and articulable facts exist to support the officer's decision. State v. Downey (1987),37 Ohio App.3d 45, 46. Any subsequent arrest must be based upon probable cause to make it at that time. State v. Timson (1974),38 Ohio St.2d 122, paragraph one of the syllabus. The test for probable cause to justify an arrest is "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. Ohio (1964), 397 U.S. 89, 91, 85 S.Ct. 223. "The subjective intentions of the [arresting] officers are irrelevant in a probable cause determination. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." State v. Cabell, Lucas App. No. L-06-1026, 2006-Ohio-4914, at ¶ 27, citing Devenpeck v.Alford (2004), 543 U.S. 146, 152, 125 S.Ct. 588. *Page 5 
 {¶ 9} Thus, in determining whether probable cause exists to arrest a suspect for driving under the influence of alcohol, the court must examine whether, at the moment of the arrest, the officer had "sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence of alcohol." State v.Homan (2000), 89 Ohio St.3d 421, 427, citing Beck, supra. In determining whether probable cause to arrest existed, a reviewing court should examine the "totality of the circumstances." Illinois v. Gates (1983),462 U.S. 213, 230-231, 103 S.Ct. 2317.
 {¶ 10} In this appeal, plaintiff argues that probable cause existed for defendant's arrest based on the following facts: defendant was under the age of 21 years old, he had a strong odor of alcohol on his breath, he had bloodshot and glassy eyes, and he failed a standardized field sobriety test.
 {¶ 11} According to plaintiff, there is a distinction between drivers under 21 years of age and those 21 years of age or older, for purposes of determining whether probable cause exists for an arrest in connection with an individual operating a vehicle after consuming alcohol. Indeed, because of his age at the time of the alleged conduct, defendant was subject to C.C. 2133.01(B) and R.C. 4511.19(B), which set lower alcohol limits for vehicle operators under 21 years old. For example, C.C. 2133.01(B)(3) prohibits any person under 21 years old from operating any vehicle when the person has a concentration of more than .02 grams but less than .08 grams by weight of alcohol per 210 liters of breath. See, also, R.C. 4511.19(B)(3). In contrast, C.C. 2133.01(A)(4) prohibits any person from operating a vehicle when the person has a concentration of .08 *Page 6 
grams but less than .17 grams by weight of alcohol per 210 liters of the person's breath. See, also, R.C. 4511.19(A)(1)(d).
 {¶ 12} In State v. Stidham (Mar. 27, 1998), Logan App. No. 8-97-34, the Third District Court of Appeals discussed the significance of the age of a vehicle operator in connection with a probable cause determination:
 * * * [B]ecause the prohibited amount of blood alcohol in an underage driver is so minimal, an arresting officer must look for more subtle evidence of drinking, and evidence of only very slight impairment of performance. Accordingly, we agree with the trial court's conclusion that an officer must look for less obvious indicators of alcohol consumption when assessing an underage drinking driver, but not because there is a `different' or `lesser' probable cause standard to satisfy. Rather, we believe that the indicators of two hundredths of a gram by weight of alcohol per two hundred ten liters of breath are more subtle than the indicators of one tenth of a gram by weight of alcohol per two hundred ten liters of breath. * * * Thus, the facts which constitute probable cause to arrest an underage driver are different from the facts necessary to constitute probable cause to arrest an adult driver. * * *
Id. See, also, State v. Gibson (Mar. 17, 2000), Ross App. No. 99 CA 2516; State v. Knight, Stark App. No. 2005-CA-140, 2005-Ohio-6951, both citing Stidham. But see State v. Hurley, Logan App. No. 8-03-14,2003-Ohio-6100, stating that "the evidentiary standard for probable cause to arrest for a OMVI violation is the same for all drivers, regardless of age." Id. at ¶ 6.
 {¶ 13} We resolve that, in this case, it is unnecessary to delve into and resolve potential issues arising due to defendant's underage because, for the reasons discussed below, probable cause existed for defendant's arrest, even without special consideration given to his age. *Page 7 
 {¶ 14} In opposition to plaintiff's assignment of error, defendant argues that the odor of alcohol on a suspect's breath and bloodshot and glassy eyes do not establish probable cause to believe that a driver is in violation of the law. Defendant relies upon State v. Gray, Franklin App. No. 01AP-1251, 2002-Ohio-4328, to support this assertion. InGray, this court determined that probable cause for the arrest of the defendant did not exist when the facts indicated that defendant was speeding and his car briefly passed left of center one time, his driving was not erratic, his motor coordination skills did not appear to be impaired, he had only a moderate odor of alcohol, and he had bloodshot eyes. See Gray, at ¶ 25.
 {¶ 15} Indeed, there are factual similarities between theGray case and the case at bar. In both cases, the HGN sobriety test was not admissible due to noncompliance with NHTSA standards, and both defendants had an odor of alcohol and bloodshot eyes. Additionally, in each case, the defendant only exhibited one "clue"[2] on the one-leg-stand sobriety test. However, there are also factual differences between Gray and the case at bar. In Gray, the defendant had a "moderate odor of alcohol." Here, defendant had a "strong odor of alcohol." Moreover, and most significantly, defendant in this case exhibited three clues on the walk-and-turn test; whereas, in the Gray case, only one clue was noted for the defendant's performance on that test. Therefore, defendant's reliance upon the Gray case is unavailing.
 {¶ 16} As suggested by the above discussion, an analysis of issues concerning the officer's administration of the standardized field sobriety tests is of particular *Page 8 
importance in this case. Regarding these tests, we must first address their admissibility at the suppression hearing.
 {¶ 17} In 2000, the Supreme Court of Ohio held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Homan, supra, paragraph one of the syllabus. Subsequently, the General Assembly enacted Am. Sub. S.B. 163, which amended R.C. 4511.19(D)(4)(b)[3] to state as follows:
 In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol, a controlled substance, or a metabolite of a controlled substance in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 (i) The officer may testify concerning the results of the field sobriety test so administered.
 (ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 (iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or *Page 9 
evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.
 {¶ 18} Through this enactment, the General Assembly "mandated a `substantial compliance' standard for the admission of field sobriety test results and their use as evidence of probable cause." State v.Cook, Wood App. No. WD-04-029, 2006-Ohio-6062, at ¶ 13. Moreover, the Supreme Court of Ohio recently characterized this amendment as "a legislative mandate by which the General Assembly through its deliberative process has concluded that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion." See Boczar, supra, at ¶ 23. Therefore, if a test is administered in substantial compliance with the applicable NHTSA standards, the results of that test are admissible; however, the weight to be given that evidence at trial is left to the trier of fact. See R.C. 4511.19(D)(4)(b).
 {¶ 19} Regarding the HGN sobriety test, defendant's appellate brief seems to suggest that the admissibility of evidence pertaining to this test is at issue in this appeal. As to this test, defendant correctly observes that the trial court determined that the officer did not substantially comply with the NHTSA manual when he administered the HGN sobriety test, and the trial court accordingly suppressed the results of the test. Additionally, defendant is correct in his assertion that a reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. See Gray, at ¶ 24. However, plaintiff does not dispute that the HGN sobriety test was not performed in substantial compliance with *Page 10 
the standards of the NHTSA manual. Thus, contrary to defendant's suggestion, the admissibility of evidence regarding the HGN test is simply not at issue in this appeal.
 {¶ 20} In regard to Officer Casimir's administration of the walk-and-turn and one-leg-stand tests, the trial court determined that these tests were administered in substantial compliance with the NHTSA standards, a determination in which defendant does not challenge as not being supported by competent, credible evidence. The trial court further discussed these tests at the suppression hearing, as follows:
 * * *The only mistake in the one-leg stand was that he counted the number 21 twice. Other than that, the young man was rock sold.
 With regard to the walk-and-turn, the officer testified to three clues, those being he moved his feet during the instructions, he took a greater length of a step than a half-inch gap, and he stepped off the line. Some of these are difficult for the Court to see from the police video.
 And I found the officer's credibility impeccable; however, when I reviewed the video with regard to his walk-and-turn, I have to say I have never seen anyone in my entire life do the turn correctly. And this is the first defendant I have ever seen turn correctly. There was a wobble; but, you know, it was probably a wobble that anybody would experience.
 So the results of those two tests that we can see are marginal. * * *
 Basically as I went back in my chambers, I have remembered the walk-and-turn and the one-leg stand and I thought that the defendant performed them pretty darn good upon my review [of the video] in the courtroom. * * *
(Aug. 15, 2006, Tr. 36.)
 {¶ 21} Thus, although the trial court found that the walk-and-turn test was administered in substantial compliance with NHTSA standards, it gave that test "marginal" *Page 11 
weight on the basis of its review of the video. Essentially, the trial court explained at the suppression hearing that it was giving the walk-and-turn test marginal weight because it viewed defendant's performance during the test as "pretty darn good," specifically noting defendant's ability to perform the "turn" aspect of the test. The trial court also viewed defendant's performance on the one-leg-stand test as "rock solid."
 {¶ 22} To the extent the trial court viewed defendant's performance on the one-leg-stand as not a reliable indicator of a BAC above 0.10, that determination was proper considering the NHTSA manual does not state that one clue on the one-leg-stand test is a reliable indicator of a BAC above 0.10. However, based on the following, we resolve that the trial court's assessment of defendant's performance on the walk-and-turn test was improper.
 {¶ 23} In State v. Morgan, Franklin App. No. 05AP-552, 2006-Ohio-5297, this court determined that it was improper for the trial court in that case to discount the results of the walk-and-turn test on the basis of its view that the test, which was conducted pursuant to NHTSA standards, was "awkward" and the efficacy was "debatable." See id. at ¶ 35. Additionally, in Morgan, this court found fault in the trial court's subjective assessment, which was based in part upon the court's viewing of the police video showing the defendant taking the field sobriety tests, that the defendant performed "relatively good" on the walk-and-turn test. See id. at ¶ 37. Regarding these issues, this court noted that "NHTSA standards `* * * are not subject to reasonable dispute because they are capable of accurate and ready determination by reference to the NHTSA manual itself, a source whose accuracy cannot be questioned given its status as the seminal authority in the area.'" Id. at ¶ 35, quoting State v. Frazee, Warren App. No. CA2004-07-085,2005-Ohio-3513, *Page 12 
at ¶ 19, quoting State v. Stritch, Montgomery App. No. 20759,2005-Ohio-1376, at ¶ 16. Moreover, this court essentially reasoned that because the trial court relied upon its own view on how well the defendant performed on the walk-and-turn test, the arresting officer's observations based upon specialized training in the detection of alcohol impairment were improperly marginalized for purposes of the suppression hearing. See id. at ¶ 37.
 {¶ 24} As in Morgan, the trial court in this case subjectively evaluated defendant's performance on the test. The trial court did not find that the clues testified to by the officer on the walk-and-turn test did not occur but, rather, discounted the results of the walk-and-turn test on the basis that it viewed defendant's performance during the test as "pretty darn good," and took particular note as to defendant's ability to perform the "turn" aspect of the test. We find that it was improper for the trial court in this case to interpret and discount the results of the walk-and-turn test on the basis of its own evaluation of defendant's performance.
 {¶ 25} The results of the walk-and-turn test indicated that defendant was impaired. The NHTSA manual states that "if the suspect exhibits two or more clues on [the walk-and-turn] test or fails to complete it, classify the suspect's BAC as above 0.10. Using this criterion, you will be able to accurately classify 68% of your suspects." Thus, when there are two or more clues on the walk-and-turn test, or when a suspect fails to complete the test, the NHTSA manual instructs an officer to classify the suspect's BAC as above 0.10. Here, defendant exhibited three clues on the walk-and-turn test according to the testimony of the administering officer, which the trial court accepted as fact. Specifically, Officer Casimir, whose credibility the trial court found to be "impeccable," testified that *Page 13 
defendant moved his feet during the instructions, that when he stepped he left a space of more than one-half inch between the heel and toe, and that he stepped off the line. Thus, according to the NHTSA manual, the results of the walk-and-turn test reliably indicated a BAC above 0.10.
 {¶ 26} Defendant notes that the evidence at the suppression hearing demonstrated that he was polite and cooperative, that there was no sign of bad driving or slurred speech, that he produced his license and the vehicle registration without any trouble, and that he had no trouble getting out of the vehicle upon the request of the officer. However, other evidence at the suppression hearing demonstrated that defendant had a strong odor of alcohol emanating from his person, that he had glassy and bloodshot eyes, and that he exhibited three clues on the walk-and-turn test, which according to the NHTSA manual, reliably indicated a BAC above 0.10.
 {¶ 27} Considering the totality of the circumstances, we resolve that the facts within the knowledge of the arresting officer were sufficient to cause a prudent person to believe that defendant was driving under the influence of alcohol. Thus, we conclude that the evidence was sufficient to establish probable cause for the arrest. Consequently, we further conclude that the trial court erred in sustaining defendant's motion to suppress. Therefore, we sustain plaintiff's single assignment of error. Accordingly, the judgment of the Franklin County Municipal Court is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed; cause remanded.
SADLER, P.J., and BROWN, J., concur.
[1] Defendant was also charged with not having his license plate properly illuminated, in violation of C.C. 2137.04(A).
[2] Regarding the walk-and-turn and one-leg-stand tests, a "clue" is a behavior likely to be observed in someone with a BAC above 0.10. See NHTSA's Concepts and Principles of the Standardized Field Sobriety Tests, Session VIII, 2004 ("NHTSA manual").
[3] The constitutionality of R.C. 4511.19(D)(4)(b) was challenged inState v. Boczar, 113 Ohio St.3d 148, 2007-Ohio-1251. In Boczar, the Supreme Court of Ohio held that "R.C. 4511.19(D)(4)(b), which provides that the results of field sobriety tests are admissible if the tests are administered in substantial compliance with testing standards, is constitutional." Id. at the syllabus. *Page 1