[Cite as *Upper Arlington v. Wissinger*, 2014-Ohio-1601.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Upper Arlington, | : | |
| Plaintiff-Appellant, | : | No. 13AP-922 |
| | | (M.C. No. 2013 TRC 148902) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Brandon M. Wissinger, | : | |
| Defendant-Appellee. | : | |

### D E C I S I O N

### Rendered on April 15, 2014

*Jeanine A. Hummer*, City Attorney for Upper Arlington, and *Thaddeus M. Boggs,* for appellant.

*Samuel H. Shamansky Co., L.P.A.*, *Samuel H. Shamansky*, *Donald L. Regensburger*, *Colin E. Peters*, and *Krystin N. Martin* for appellee.

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, the City of Upper Arlington ("the City"), appeals from a decision and entry of the Franklin County Municipal Court granting defendant-appellee, Brandon Wissinger's motion to suppress. Because the trial court did not err in granting appellee's motion to suppress, we affirm.

### I. Facts and Procedural History

{¶ 2} On June 9, 2013, appellee was charged with one count of operating a vehicle under the influence ("OVI"), in violation of City of Upper Arlington Ordinance 353.01(A); one count of OVI per se, in violation of City of Upper Arlington Ordinance 353.01(B)(2); and one count of operating a vehicle with expired tags, in violation of City of Upper Arlington Ordinance 355.08(E). According to the traffic ticket, appellee was to appear in

Upper Arlington Mayor's Court on June 13, 2013. Pursuant to appellee's jury demand, the case was transferred to the Franklin County Municipal Court on June 13, 2013, and appellee subsequently entered a plea of not guilty.

{¶ 3} On July 25, 2013, appellee filed a motion to suppress the results of the chemical breath test performed after his arrest and other evidence seized during the June 9, 2013 traffic stop. The trial court conducted a hearing on appellee's motion to suppress on October 23, 2013. By stipulation, appellee limited the scope of the hearing to whether there was probable cause for appellee's arrest and the subsequent chemical breath test.

{¶ 4} According to the evidence at the suppression hearing, Officer Gino Bromelia of the Upper Arlington Police Department was on patrol during the early morning hours of June 9, 2013. While Officer Bromelia was stopped at the light at the intersection of Lane Avenue and Northwest Boulevard, he ran a random registration check on appellee's vehicle revealing appellee's license plate tags had expired. Officer Bromelia proceeded to follow appellee's vehicle and observed appellee make two consecutive left turns resulting in appellee traveling in the opposite direction of the direction he had been driving when Officer Bromelia first noticed him. At that point, Officer Bromelia activated his overhead lights and initiated a traffic stop. Appellee promptly pulled over and made a "safe stop" on a residential street. (Tr. 7.)

{¶ 5} Upon approaching the vehicle, Officer Bromelia identified the driver as appellee and "smelled the odor of a strong alcoholic beverage coming from the vehicle." (Tr. 8.) Officer Bromelia testified that appellee's eyes were "glassy and bloodshot," and that appellee admitted to having come from a bar. (Tr. 8.) Officer Bromelia asked appellee whether he had consumed any alcoholic beverages, and appellee stated he had three beers. With appellee still seated in the vehicle and Officer Bromelia standing outside the window, Officer Bromelia asked appellee to follow a pen with his eyes without moving his head. Officer Bromelia further testified he later heard appellee state the beers were 32 ounces each.

{¶ 6} When Officer Bromelia asked why appellee turned around and "essentially had just driven in circles," Officer Bromelia determined appellee could not provide a satisfactory answer. (Tr. 8.) Appellee stated he was going to a friend's house on Godown

Road, which is north of where Officer Bromelia stopped appellee traveling south. At that point, Officer Bromelia ordered appellee out of the vehicle to administer field sobriety tests.

{¶ 7} During the hearing, the City provided for the trial court the video of the traffic stop which included the administration of the field sobriety tests. The first test was the horizontal gaze nystagmus ("HGN") test, and Officer Bromelia testified he observed six out of six signs for impairment. Officer Bromelia then administered two other field sobriety tests. He testified that appellee swayed on the one-leg stand and failed the test, but he did not discuss the third test. Once Officer Bromelia completed the field sobriety tests, he arrested appellee for OVI. Officer Bromelia stated he arrested appellee "based on the sobriety tests, based on his driving, and my interactions with him, his glassy, bloodshot eyes, the odor of an alcoholic beverage, the fact that he had stated he had consumed 96 ounces of beer and had been coming from a bar and was traveling -- for whatever reason, was traveling the opposite direction of his intended destination." (Tr. 11.)

{¶ 8} On cross-examination, appellee's counsel asked Officer Bromelia whether appellee could have stated the beers were each 22 ounces rather than 32 ounces, and Officer Bromelia stated he heard appellee say 32 ounces. Officer Bromelia agreed appellee was not weaving within his lane, he did not drive over the curb, he was not driving erratically, he was not speeding, he was not slowing down and speeding up, he did not hit any other vehicles, and he did not commit any moving traffic violations. Further, Officer Bromelia agreed appellee was cooperative and straightforward during the traffic stop.

{¶ 9} In an oral decision on October 23, 2013, journalized in a written entry filed October 24, 2013, the trial court granted appellee's motion to suppress, concluding, based on the totality of the circumstances, that Officer Bromelia lacked probable cause to arrest appellee for OVI. The trial court concluded, based on the officer's testimony and, confirmed by its viewing of the video, appellee's driving did not show signs of impairment, i.e., appellee was not speeding and he was not driving erratically. Additionally, the trial court determined Officer Bromelia did not provide sufficient instructions to appellee before administering the HGN test and, thus, disallowed the consideration of that test as

part of the probable cause analysis. The trial court also concluded appellee passed the other two field sobriety tests administered after appellee stepped out of the vehicle.

{¶ 10} The City timely appeals pursuant to Crim.R. 12(K). The trial court has stayed further proceedings pending the outcome of this appeal.

## II. Assignments of Error

{¶ 11} On appeal, appellant assigns the following two assignments of error for our review:

> 1. The trial court erred in granting [appellee's] motion to suppress since the officer had reasonable suspicion to stop the [appellee] for expired tags.
>
> 2. The trial court erred in granting [appellee's] motion to suppress since the officer had probable cause to arrest the [appellee] for operating a vehicle while under the influence of alcohol (OVI).

## III. Standard of Review and Applicable Law

{¶ 12} Both of appellant's assignments of error claim the trial court erred in granting appellee's motion to suppress. " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 13} The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as the Ohio Constitution, Article I, Section 14, prohibits the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza,* 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967), superseded by statute on other grounds. Even so, "not all personal intercourse

between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 (1968), fn. 16.

{¶ 14} Under *Terry*, a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot. *Mendoza* at ¶ 11, citing *Terry* at 21. Accordingly, "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, superseded by statute on other grounds, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981).

{¶ 15} For purposes of the Fourth Amendment, a person has been seized when an officer conducts an investigative stop and detains the person in order to administer field sobriety tests. *State v. Robinette*, 80 Ohio St.3d 234, 240-41 (1997). Accordingly, before an officer may conduct field sobriety tests, an officer must have reasonable suspicion based upon specific, articulable facts that a driver is intoxicated. *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 8, appeal not allowed, 121 Ohio St.3d 1409, 2009-Ohio-805.

## IV. Discussion

### A. Reasonable Suspicion for Initial Stop

{¶ 16} In its first assignment of error, the City asserts the trial court erred in granting appellee's motion to suppress because the officer had reasonable suspicion to stop appellee for expired tags.

{¶ 17} The City is correct that a law enforcement officer has probable cause to initiate a traffic stop when a vehicle has expired tags. *See State v. Lattimore*, 10th Dist. No. 03AP-467, 2003-Ohio-6829, ¶ 10, citing *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus. However, the City's argument is misplaced. The trial court stated the officer "had a reasonable suspicion to give him a ticket * * * for expired tags." (Tr. 17.) Thus, the trial court did not conclude the initial traffic stop was unreasonable and did not suppress any evidence on that basis. Accordingly, we overrule the City's first assignment of error.

## B. Probable Cause to Arrest

{¶ 18} In its second assignment of error, the City argues the trial court erred in granting appellee's motion to suppress because it asserts the officer had probable cause to arrest appellee for OVI.

{¶ 19} "In determining whether a police officer has probable cause to arrest a suspect for OVI, a court considers whether, at the moment of arrest, the officer had information within the officer's knowledge, or derived from a reasonably trustworthy source, of facts and circumstances sufficient to cause a prudent person to believe the suspect was driving under the influence of alcohol, drugs, or both." *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 20, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), superseded by statute on other grounds. The trial court must examine the totality of the circumstances surrounding the arrest in making this determination. *Id.* Probable cause does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests. Rather, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of [substantial] compliance." *Homan* at 427.

{¶ 20} The City first argues the trial court erroneously concluded Officer Bromelia's instructions to appellee before administering the HGN test were improper. At the suppression hearing, defense counsel stipulated to Officer Bromelia's training in, and qualifications to administer, field sobriety tests, stating "[w]e're not worried about the [field sobriety tests]." (Tr. 5-6.) From this statement, the City argues appellee stipulated that Officer Bromelia properly instructed appellee on the HGN test before administering it and therefore the trial court erred when it concluded contrary to this stipulation that the officer's instructions were deficient. *See State v. Turner*, 105 Ohio St.3d 331, 2005-Ohio-1938, ¶ 40 (noting "a stipulation, which is agreed to by *both* parties, *is* evidence"). (Emphasis sic.)

{¶ 21} Initially, we note the parameters of the stipulation are not clear from the transcript. Indeed, when read in context with the line of questioning, it appears this stipulation related to Officer Bromelia's general qualifications to administer field sobriety tests. In his underlying motion giving rise to the suppression hearing, appellee

specifically argued the officer conducted the HGN test without instruction and not in substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") testing standards. Generally, in discerning the intent of the parties in the language of a stipulation, courts will not construe a stipulation to admit a fact obviously intended to be controverted. *See, e.g., Beyer v. Miller*, 90 Ohio App. 66, 69 (12th Dist.1951). Thus, we find it unlikely that defense counsel intended this statement to encompass any and all complaints about the manner in which the officer conducted the field sobriety tests.

{¶ 22} Further, the video demonstrates the instructions the officer gave to appellee prior to the administration of the HGN test were inadequate. The officer initially performed the HGN test while appellee was still seated in his vehicle. By way of instruction, the officer stated only, "[d]o me one favor. Can you see my pen okay? Can you keep your head still and follow that with your eyes?" (Video 02:55.) Officer Bromelia administered the HGN test to appellee again once he was standing outside the vehicle. Prior to administering the test for the second time, Officer Bromelia asked whether appellee wore contact lenses or required glasses, instructed him to stand with his arms at his side, again asked whether he could see the tip of the pen, and told appellee to keep his head still and follow the tip of the pen with his eyes only.

{¶ 23} The NHTSA manual provides an officer administering the HGN test should "[b]egin by asking 'are you wearing contact lenses' " and make a note of the suspect's response before starting the test. *State v. Robertson*, 10th Dist. No. 03AP-277, 2004-Ohio-556, ¶ 7. The NHTSA manual then provides the officer should "[g]ive the suspect the following instructions from a position of interrogation * * *: 'I am going to check your eyes.' 'Keep your head still and follow this stimulus with your eyes only.' 'Keep focusing on this stimulus until I tell you to stop.' " *Id.*

{¶ 24} Although Officer Bromelia testified appellee showed six out of six signs of impairment during this test, it is unclear from the transcript whether the officer found six out of six signs on the HGN test performed while appellee remained seated in the vehicle or whether he saw those signs while appellee was standing outside. The instructions provided while appellee remained in the vehicle did not substantially comply with the NHTSA manual. Officer Bromelia did not ask whether appellee was wearing contact

lenses, did not inform appellee he was going to check his eyes, and did not tell him to keep focusing on the pen until he was told to stop. When Officer Bromelia performed the HGN test again, he again did not tell appellee he was going to check appellee's eyes and he did not tell him to keep focusing on the pen until he was told to stop. The trial court thus observed the complete instructions given to appellee prior to the administration of the HGN test and determined these instructions were inadequate, a finding the record supports at least as to the instructions provided while appellee remained in his car.

{¶ 25} Given that we cannot tell from the record whether the officer's testimony that six out of six signs were present referred to the HGN test performed in the car or the HGN test performed outside the car, and the record demonstrates the instructions for the HGN test performed in the car were not sufficient, we will assume the regularity of the proceedings, and, thus, we find no error in the trial court's conclusion that the instructions for the HGN test were inadequate. *See*, *e.g.*, *State v. Hurley*, 3d Dist. No. 8-03-14, 2003-Ohio-6100, ¶ 3, ¶ 5 (finding the trial court properly discounted the results of the HGN test where the arresting officer's only instructions prior to the HGN test were that "he just told [the defendant] to follow the stimulus until told to stop," so the Third District determined the officer performed the HGN test "with inadequate instructions" and, thus, it did not factor into the probable cause determination).

{¶ 26} We move next to the other two field sobriety tests Officer Bromelia administered to appellee: the walk-and-turn test and the one-leg stand test. As to the one-leg stand test, Officer Bromelia also conceded, as confirmed by the video, that appellee's foot was up off the ground, his other foot firmly planted, and appellee never put both feet down. The officer further testified appellee was swaying, though that is not confirmed by the video. Even if appellee swayed, exhibiting only one "clue" on the one-leg stand test is not considered a "failure" by NHTSA standards. *See State v. Morgan*, 10th Dist. No. 05AP-552, 2006-Ohio-5297, ¶ 12. Regarding the walk-and-turn test, there is no testimony at all and no indication, as the video confirms, that appellee failed that test. In his testimony, Officer Bromelia did not explain what appellee did while performing those tests that indicated impairment. The trial court properly concluded from the testimony, as confirmed by the video, that appellee passed both the one-leg stand test and the walk-and-turn test.

{¶ 27} The City urges that in considering a motion to suppress, a trial court must not rely on its own observations from viewing the police cruiser video and, instead, should defer to the officer's specialized training and ability to detect impairment on the scene. In support, the City relies on this court's decision in *Morgan*.

{¶ 28} We find *Morgan* consistent with the trial court's decision. The law enforcement officer in *Morgan* testified extensively at the suppression hearing both as to the testing standards in the NHTSA manual and his observations of the defendant during the traffic stop. The law enforcement officer further explained, in very specific language, what the defendant did during the course of each field sobriety test that added to the officer's determination that he had probable cause to arrest the defendant for OVI. The trial court in *Morgan* also viewed the cruiser video of the traffic stop. Ultimately, the trial court granted the defendant's motion to suppress.

{¶ 29} On appeal in *Morgan*, this court criticized the trial court for evaluating in isolation the officer's six enumerated factors he relied upon, dismissing them for one reason or another. *Id.* at ¶ 31. This court further admonished the trial court for relying on "its own observations culled from reviewing the videotape," as it "seriously undercuts" the principle that a law enforcement officer's observations are entitled to deference. *Id.* at ¶ 37.

{¶ 30} While the City construes *Morgan* to mean that the trial court should defer to the officer's observations on the scene, this argument ignores the important role the trial court plays in evaluating the weight and credibility of the evidence before it. Nothing in *Morgan* requires the trial court to blindly defer to an officer's testimony, even if the officer is the sole testifying witness. Indeed, in *Morgan* this court repeatedly noted that the "videotape confirms" certain testimony and the videotape demonstrated the techniques "used in administering the HGN test to appellee." *Id.* at ¶10, 11, and 12. Were we to adopt the City's interpretation, *Morgan* would mean that the police cruiser videos of traffic stops are irrelevant so long as the arresting officer testifies. We will not so interpret *Morgan*.

{¶ 31} Here, the trial court did not rely solely on its own subjective analysis of the cruiser video in finding there was no probable cause for an arrest. Instead, the trial court agreed with the officer that appellee was not speeding and was not driving erratically, as

the video confirms. The trial court also agreed with the officer that appellee's foot was up off the ground, his other foot firmly planted, and appellee never put both feet down, as the video confirms. Absent contrary testimony, and as confirmed by the video, appellee passed the walk-and-turn test. Finally, the trial court determined, contrary to the testimony, but as the video demonstrates, the officer failed to properly instruct appellee as to how to complete the HGN test. The trial court did not use the video to second guess the officer's conclusion about appellee's performance on a field sobriety test, but rather to confirm the events and to review whether the officer conducted the field sobriety tests consistent with NHTSA standards.

{¶ 32} The City erroneously relies on *Columbus v. Weber*, 10th Dist. No. 06AP-845, 2007-Ohio-5446, to support its request for reversal. In *Weber*, the trial court similarly found that the HGN sobriety test was not properly administered and the trial court refused to consider that evidence. *Id.* at ¶ 19. In *Weber*, the city did not dispute the exclusion of the HGN test; thus, it was not an issue in the appeal. Similar to the trial court here, the trial court in *Weber* found that one sign on the one-leg stand test is not a failure based on the NHTSA standards. *Id.* at ¶ 22. However, unlike this case, in *Weber* the trial court substituted its judgment for that of the officer in determining how the defendant performed on the walk-and-turn test as a basis for granting the motion to suppress. *Id.* at ¶ 24. Here, the officer did not testify regarding the walk-and-turn test, presumably because appellee passed that test. The *Weber* decision, like the decision in *Morgan,* prohibits the trial court from completely substituting its judgment for the officer, which, as we have already stated, is not what occurred here.

{¶ 33} The City also urges this court not to rely on our decision in *State v. Gray*, 10th Dist. No. 01AP-1251, 2002-Ohio-4328, suggesting it is factually distinguishable from the present case. In *Gray,* the trial court similarly excluded the HGN field sobriety test and found the defendant passed the remaining two field sobriety tests. This court affirmed the trial court's decision to suppress the results of the field sobriety tests and dismiss the charges based on the lack of probable cause to arrest. In *Gray,* the defendant was speeding, briefly crossed over the center line, had a "moderate" odor of alcohol, admitted drinking "a little bit," and had blood shot eyes early in the morning. *Id.* at ¶ 22. Based on those facts, this court found that competent, credible evidence supported the

trial court finding a lack of probable cause because, absent the results of the field sobriety tests, those facts were not sufficient to establish probable cause for Gray's arrest. *Id.* at ¶ 25. Here, appellee admitted consuming alcohol, had an odor of alcohol on his breath, and had bloodshot eyes early in the morning. Unlike the defendant in *Gray*, however, appellee was not driving erratically or speeding. Thus, to the extent the facts of this case are distinguishable from the facts of *Gray*, those factual distinctions lend more support to the trial court's conclusion that the officer lacked probable cause to arrest appellee.

{¶ 34} Finally, the City argues that *Morgan* cautions against a piecemeal approach to the totality of the circumstances test. In *Morgan*, we reversed a judgment of the trial court granting the defendant's motion to suppress because we determined the "accumulated observations" of the law enforcement officer sufficiently established probable cause for arrest. *Morgan* at ¶ 41. Here, however, the trial court made factual findings after weighing the credibility of the evidence at the hearing. From those factual findings, the trial court looked at the totality of the circumstances and determined there was no probable cause to arrest. Because some competent, credible evidence supports the trial court's factual findings, we must defer to them. Given those factual findings, we cannot say, under the totality of the circumstances, that the trial court erred in concluding the officer lacked probable cause to arrest appellee for OVI.

{¶ 35} Because the trial court did not err in determining the officer lacked probable cause to arrest appellee for OVI, we overrule the City's second assignment of error.

## V. Conclusion

{¶ 36} Based on the foregoing reasons, the trial court did not err in granting appellee's motion to suppress. Having overruled appellant's two assignments of error, we affirm the decision of the Franklin County Municipal Court.

*Judgment affirmed.*

CONNOR and O'GRADY, JJ., concur.

———————