[Cite as *Columbus v. Fuentes*, 2014-Ohio-3337.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 13AP-802 |
| v. | : | (M.C. No. 2013 TRC 146285) |
| Oscar Bahena Fuentes, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

_____

D E C I S I O N

Rendered on July 31, 2014

_____

*Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker*, and *Melanie R. Tobias*, for appellant.

*Scott & Nolder Co., LPA,* and *Megan Grant*, for appellee.

_____

APPEAL from the Franklin County Municipal Court.

BROWN, J.

{¶ 1}  Plaintiff-appellant, the city of Columbus, appeals from a judgment of the Franklin County Municipal Court sustaining a motion by defendant-appellee, Oscar Bahena Fuentes, to suppress evidence obtained pursuant to a traffic stop.

{¶ 2}  The city brings the following sole assignment of error on appeal:

The trial court erred when it granted Defendant's motion to suppress.

{¶ 3}  The sole issue before us in this appeal is whether the arresting officer had reasonable suspicion to stop Fuentes's vehicle based upon a telephone tip from an identified informant.

{¶ 4} On the evening of the arrest, the owner or manager of a local business called the Columbus Division of Police to report that one of his employees was leaving work in an intoxicated state after drinking on the job all day. The caller identified the driver as a Hispanic male driving a black car with an Illinois license plate number. The caller further told the dispatcher that the impaired driver was heading toward the intersection of Broad Street and I-270.

{¶ 5} The police radio dispatcher accordingly notified an officer on patrol, Officer Marcus Miller, of an impaired driver in the vicinity with the appropriate description. The dispatcher also notified Officer Miller that the same caller had called a tip in on the previous day reporting the same behavior by the employee driving away from the business after drinking there all day.

{¶ 6} Officer Miller and his partner traveled east on Broad Street and soon encountered a driver in a vehicle matching the description given by the radio dispatcher. The officers observed no erratic driving or traffic offenses committed by Fuentes, and pulled his vehicle over on the sole basis of the informant telephone call relayed by the radio dispatcher. As a result of the stop, Fuentes was charged with operating a vehicle under the influence ("OVI") and OVI per se. He entered a plea of not guilty, and counsel moved to suppress based on the absence of a reasonable suspicion prior to the stop of Fuentes's vehicle. The trial court eventually granted the motion to suppress, finding that there was not reasonable suspicion based upon the content of the informant call to pull Fuentes over without any further indicia of intoxication.

{¶ 7} Pursuant to the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and pursuant to Article I, Section 14, of the Ohio Constitution, individuals are protected by unreasonable search and seizure by police. "For purposes of the Fourth Amendment, a person has been seized when an officer conducts an investigative stop and detains the person in order to administer field sobriety tests." *Upper Arlington v. Wissinger*, 10th Dist. No. 13AP-922, 2014-Ohio-1601, ¶ 15, citing *State v. Robinette*, 80 Ohio St.3d 234, 240-41 (1997). "[B]efore an officer may conduct field sobriety tests, an officer must have reasonable suspicion based upon specific, articulable facts that a driver is intoxicated." *Id.*, citing *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 8. It is the state's burden

to prove that reasonable suspicion was present based upon specific, articulable facts. *Perkins* at ¶ 8.

{¶ 8} The trial court stands as the trier of fact when ruling on a motion to suppress, and is in the best position to resolve factual questions and evaluate witness credibility. *State v. Hogan*, 10th Dist. No. 11AP-644, 2012-Ohio-1421, ¶ 17. Upon appeal to this court, we undertake a mixed standard of review giving deference to the trial court's factual determinations and reviewing independently the disputed questions of law. *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 46 (10th Dist.); *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 49.

{¶ 9} Both the trial court and Fuentes in this case relied on our decision in *State v. Brant*, 10th Dist. No. 01AP-342 (Nov. 29, 2001), in which we addressed the question of whether an identified citizen tip, bearing every indicia of reliability, must contain information relating to possible criminal activity in order to justify an investigative stop. In *Brant*, a fast food restaurant employee working at the drive-thru window called police to report that a customer at the drive-thru was honking his horn repeatedly, had his shirt on backwards, and exhibited slow speech. Based solely upon this phone tip, police stopped the defendant's vehicle, obtained further evidence of intoxication, and the driver was eventually charged with OVI. As in the case before us, the police in *Brant* did not observe any erratic driving or other indicia of possible intoxication or criminal behavior prior to effectuating the stop.

{¶ 10} In *Brant* we held that a telephone tip, even one bearing every indicia of reliability that contained only neutral details and lacked sufficient information to provide reasonable suspicion of operating a motor vehicle while under the influence, did not provide a sufficient basis for an investigative stop. The caller in *Brant* did not indicate that the defendant smelled of alcohol, admitted to drinking alcohol or that the caller witnessed the defendant drinking alcohol. Because we determined that the tip received by police was insufficient to establish reasonable suspicion, we then looked to whether the officer had witnessed any erratic driving.

{¶ 11} In the present case, the trial court interpreted *Brant* to hold that, even in the presence of a tip from a reliable and identified informant, police must have independent observation of facts supporting an inference of criminal conduct before

undertaking an investigative stop. Our decision in *Brant* must be read in a manner that makes the holding therein consistent with the holding of the Supreme Court of Ohio in *Maumee v. Weisner*, 87 Ohio St.3d 295 (1999). "Where * * * the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. * * * The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id.* at 299. *Weisner*, therefore, contemplates that a tip provided by the most reliable class of informant, the identified citizen informant, can bear sufficient indicia of reliability to provide the sole basis for an investigative stop without additional personal observation by the investigating police officer.

{¶ 12} The city asserts that the content of the informant call in the case before us is distinguishable from that in *Brant* because it does not lack the specificity of criminal conduct that was missing from *Brant*. We agree. In *Brant*, we found that the intervening officer did not have a reasonable suspicion based on articulable facts to stop the defendant's vehicle because information provided by the drive-thru restaurant employee was insufficient to establish such a reasonable suspicion. The caller did describe certain suspicious conduct, but did not witness any specific traffic violations, odor of alcohol or specific evidence of impaired driving.

{¶ 13} In the case before us, the content of the call from a known caller is far more specific and contains actual evidence of criminal activity: the caller indicated Fuentes had been drinking all day at the caller's place of business, became intoxicated, and then got into a car and drove away. It was not necessary for the caller to describe specific instances of impaired driving on the part of Fuentes, once the caller had identified the specific element of excess consumption of alcohol to the extent of being intoxicated followed by taking the wheel of a motor vehicle. Because we have determined here that the tip was sufficient to establish reasonable suspicion, the officer need not personally witness erratic driving.

{¶ 14} Other appellate districts have similarly distinguished their cases from *Brant* on this basis. In *State v. Yoder*, 5th Dist. No. 2008CA00197, 2009-Ohio-4013, the court held that a citizen's tip call to an OVI hotline that described an individual urinating in the

parking lot of a restaurant and staggering to his vehicle before driving away was sufficient, by itself, to justify a stop of the vehicle. *Id.* at ¶ 2, 21. In *State v. Reed*, 2d Dist. No. 23357, 2010-Ohio-299, the court held that there was sufficient, reasonable suspicion to stop a vehicle based upon a phone tip from a convenience store worker who noticed a strong odor of alcohol on the defendant when he purchased beer at the store and saw the defendant stumble out of the door before taking the wheel. *Id.* at ¶ 3.

{¶ 15} As in *Yoder* and *Reed*, we find the facts in the present case distinguishable from the facts we assessed in *Brant*. We accordingly conclude that the trial court erred in suppressing the evidence obtained pursuant to the investigative stop because the stop was based upon a phone tip from an identified citizen informant that contained sufficient, descriptive evidence of impaired driving to justify the investigative stop. The judgment of the Franklin County Municipal Court is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this decision.

*Judgment reversed and cause remanded.*

SADLER, P.J., concurs.
TYACK, J., dissents.

TYACK, J. dissenting.

{¶ 16} I respectfully dissent.

{¶ 17} This is a case which involved no arrest warrant and no search warrant. Warrantless searches and warrantless seizures of the person are per se unreasonable unless the government can fit the situation into a well-delineated and well-defined exception to the warrant requirement. This has been the law governing Fourth Amendment issues for almost 50 years. *See Katz v. United States*, 389 U.S. 347 (1967).

{¶ 18} The city of Columbus does not even attempt to establish that the officer who stopped the vehicle being operated by Oscar Bahena Fuentes had probable cause to believe that Fuentes was committing a traffic offense. The officer viewed the vehicle for a period of time and saw no erratic driving. With no probable cause, the automobile exception to the warrant requirement does not apply.

{¶ 19} The city, instead, tries to import the law of stop and frisk into a traffic stop situation. The stop and frisk doctrine stems from *Terry v. Ohio*, 392 U.S. 1 (1968). Before

*Terry*, it was commonly believed that police had to have probable cause to believe a citizen had committed a crime before police could stop a citizen in public and detain the citizen long enough to frisk the citizen. The United States Supreme Court in *Terry* decided that a citizen could be detained on a public sidewalk for long enough for the citizen to be frisked if police had a reasonable, articulable suspicion that the citizen was engaging or was about to engage in illegal activity. The stop is supposedly justified for no longer than is required to do the frisk, but the United States Supreme Court has strayed from that portion of the *Terry* situation, finding a 20-minute detention reasonable. *See United States v. Sharpe*, 470 U.S. 675 (1985).

{¶ 20} The United States Supreme Court has also allowed the stop and frisk prerogative of police to apply to traffic stops. *See Adams v. Williams*, 407 U.S. 143 (1972). However, the facts in the *Adams* case were very different from the facts here. In *Adams*, an informant who had previously given information to a police officer, told the officer that a person seated in a nearby vehicle was carrying narcotics and had a gun at his waist. The officer approached the vehicle and reached into it to remove the loaded gun from the waistband. The United States Supreme Court relied upon the theory that a police officer making a reasonable investigative stop may conduct a limited protective search for concealed weapons when the officer has reason to believe the suspect is armed and dangerous.

{¶ 21} The law has broadened somewhat in favor of police since the *Adams* case. But police still must have a reasonable articulable suspicion that a traffic law has been violated in order to stop a vehicle. *See Whren v. United States*, 517 U.S. 806 (1996).

{¶ 22} In the case of Fuentes, someone who claimed to be the owner or manager of a business called a police dispatcher and claimed that the driver of a certain vehicle was intoxicated and had been drinking all day. Note, the police dispatcher did not identify and apparently could not identify the caller. At most, the dispatcher passed on what the caller claimed.

{¶ 23} I note in passing that it is not illegal to drink all day. The size of the individual and the number of alcoholic beverages consumed could be significant. The length of time of consumption could be a positive or negative factor since the human body burns off alcohol in its system. Further, the claim of drinking "all day" does not really

inform the dispatcher of the time period the caller is describing or what opportunity the caller had to observe the situation.

{¶ 24} In short, an unknown caller claimed to a police dispatcher that an unnamed person was intoxicated and driving a certain motor vehicle. In addition, the unknown caller had made a similar claim the night before.

{¶ 25} I disagree with the majority's description of this being "an identified citizen tip." The arresting officer knew nothing and only responded to what the dispatcher told him. The dispatcher did not know who called, only that the person claimed to be "a business owner or operator."

{¶ 26} Again, the call to police was from an unknown source. I hate to think that any person with a grudge could call police, accurately describe a car, claim the driver was intoxicated and cause police to pull the car over despite the fact police saw no erratic or illegal driving.

{¶ 27} As in *State v. Brant*, 10th Dist. No. 01AP-342 (Nov. 29, 2001), the telephone call from the person who claimed to be a business owner or operator did not provide significant evidence of criminal activity. It is not illegal to drink all day, as noted earlier. It is not even illegal to be intoxicated, unless the individual presents a risk to himself/herself or others. The caller did not communicate the quantity of alcohol consumed, but only claimed that the consumption was "all day" and that by the caller's standards, Fuentes was intoxicated. The police really had no ability to evaluate the caller's credibility or accuracy as to the claims of illegal driving to the extent police tried to evaluate illegal driving, they saw nothing untoward. To me, the majority's attempt to distinguish *Brant* is not persuasive.

{¶ 28} I believe the trial court judge got it right when she granted the motion to suppress. I believe the majority of this panel is getting it wrong and setting a precedent which could prove to be a very bad precedent if anyone with a grudge can cause police to pull a citizen over despite police seeing no illegal or erratic driving.

{¶ 29} I respectfully dissent.

_____