[Cite as *State v. Simmons*, 2019-Ohio-559.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 18AP-183 |
| v. | : | (M.C. No. 17TRC-174106) |
| Diamond L. Simmons, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 14, 2019

**On brief:** *Zachary M. Klein*, City Attorney, *Lara N. Baker*, *Melanie R. Tobias*, and *Orly Ahroni*, for appellant. **Argued:** *Orly Ahroni.*

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellee. **Argued:** *George M. Schumann.*

APPEAL from the Franklin County Municipal Court

BRUNNER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals a decision of the Franklin County Municipal Court, entered on March 14, 2018, suppressing the results of a chemical test for marijuana as the poisonous fruit of an illegal arrest. Because the trial court's factual conclusions were consistent with and supported by evidence presented during the suppression hearing, and because the trial court did not err in articulating the law or applying it to the facts, we affirm the suppression decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 27, 2017, an Ohio State Trooper, Justin Hurlbert, wrote defendant-appellee, Diamond L. Simmons, a ticket for an alleged violation of R.C. 4511.19(A)(1)(j)(viii)(II), operating a vehicle with a concentration of marijuana metabolite in his urine of greater than 200 nanograms per milliliter of urine. (Apr. 27, 2017 Ticket.)

Simmons pled not guilty and, on March 7, 2018, the case proceeded to a motion hearing on the legality of the stop and seizure of Simmons, including the urinalysis performed. (Sept. 13, 2017 Plea Form; Mar. 7, 2018 Hearing Tr., filed Apr. 20, 2018.)

{¶ 3} During the hearing, a video of the stop was played. *See, e.g.*, Hearing Tr. at 38. The video reflects that at approximately 1:40 a.m. on April 27, 2017, Simmons passed Hurlbert in the opposite lane of travel at a speed that Hurlbert clocked at 57 m.p.h. in a 35 m.p.h. zone. (State's Ex. 2 at 1:41:22-29; Hearing Tr. at 18-19.) Hurlbert executed a U-turn and accelerated to an extremely significant speed to catch Simmons but did not yet activate his emergency lights or siren. (State's Ex. 2 at 1:41:29-1:42:14.) Upon Hurlbert's rapid approach, Simmons accelerated further until both cars were traveling at a speed that Hurlbert testified was in excess of 90 m.p.h. (State's Ex. 2 at 1:42:14-30; Hearing Tr. at 20.) After more than 30 seconds of chasing Simmons at high speed without having activated his emergency lights or siren, Hurlbert activated both lights and siren. (State's Ex. 2 at 1:41:29-1:42:33.) Simmons immediately applied his brakes, taking approximately 40 seconds to slow down and pull into a public drive at a school where he came to a complete stop. (State's Ex. 2 at 1:42:32-1:43:13.) During the pursuit through winding and somewhat hilly country, both Simmons and Hurlbert crossed the center line or veered into the turn lane several times. (State's Ex. 2 at 1:41:44, 1:41:55, 1:42:19, 1:42:27, 1:43:06-10.)

{¶ 4} When Hurlbert confronted Simmons about his flight, Simmons indicated that he had accelerated to get away because he had not realized that Hurlbert was a police officer. (State's Ex. 2 at 1:43:37-1:44:27.) Hurlbert ordered Simmons from his car and directed him to sit in the squad car. (State's Ex. 2 at 1:44:47-1:45:40.) Hurlbert acknowledged that Simmons' movements and speech were normal. (Hearing Tr. at 38, 48-49.) Nonetheless, once Simmons was sitting in the squad car, Hurlbert began to question him about alcohol and substance use. (State's Ex. 2 at 1:45:40-1:47:00.) Simmons denied drinking but admitted he smoked marijuana a "couple" of days prior to being pulled over. (State's Ex. 2 at 1:46:40-1:47:12.) Hurlbert testified at the hearing that he smelled burnt marijuana emanating from the vehicle and from Simmons' person. (Hearing Tr. at 21, 23.) Though Hurlbert commented during the video that the passenger in the car with Simmons smelled of marijuana, the video does not disclose any commentary by Hurlbert that Simmons smelled of marijuana. (State's Ex. 2 at 1:49:30-1:50:24.) Hurlbert did comment

during the video that Simmons' eyes were "all glazed over."   (State's Ex. 2 at 1:46:57-1:47:01.)

{¶ 5}   Hurlbert required Simmons to submit to several roadside tests.   He administered a horizontal gaze nystagmus ("HGN") test and a lack of convergence ("LOC") test while the two were seated in the car.  (State's Ex. 2 at 1:47:18-1:48:30; Hearing Tr. at 24.)  Neither test is visible on the video, and the LOC test is not a test recognized or referred to in the National Highway Traffic Safety Administration ("NHTSA") manual for DWI Detection and Standardized Field Sobriety Testing, which was submitted by the State as Exhibit 1 during the hearing.  (State's Ex. 1 in passim.)  The manual also does not address whether the HGN is useful to detect intoxication under the influence of marijuana.  *Id.* According to Hurlbert's testimony at the hearing, Simmons showed no "clues" of intoxication on the HGN test but demonstrated a lack of convergence in one eye on the LOC test.  (Hearing Tr. at 24, 29-30.)  Although Hurlbert was not qualified as an expert during the hearing, he offered the opinion that the LOC was highly indicative of marijuana intoxication and that "no clues" result on the HGN test was consistent with marijuana usage. *Id.*

{¶ 6}   While Hurlbert and Simmons were still seated in the car, Hurlbert also administered three other tests (the validity of which is not accounted for in the NHTSA manual).  (State's Ex. 1 in passim.)  He had Simmons touch each of his fingers to his thumb while counting 1, 2, 3, 4, 4, 3, 2, 1.  (Hearing Tr. at 30-31; State's Ex. 2 at 1:56:15-33.) Simmons can be heard on video completing this test smoothly, but Hurlbert testified during the hearing that Simmons stumbled in counting and failed to adequately touch thumb to finger tips.  (Hearing Tr. at 30-31; State's Ex. 2 at 1:56:17-33.)   Hurlbert also required Simmons to recite the alphabet from D to N and count backwards from 52 to 38.  (Hearing Tr. at 31-32; State's Ex. 2 at 1:56:31-1:57:10.)  From our view of the video, it can be observed that Simmons paused mid-count to ask the officer to repeat the instruction on the range of numbers to be counted; the trooper admitted that Simmons completed both the alphabet and counting tasks to his satisfaction.  (Hearing Tr. at 31-32; State's Ex. 2 at 1:56:32-1:57:10.)

{¶ 7}   Hurlbert next asked Simmons to join him in front of the squad car where he requested that Simmons perform two sobriety tests covered in the NHTSA manual, the one

leg stand ("OLS") and the walk and turn ("WAT"). Hurlbert asserted that Simmons swayed and experienced tremors during the OLS exam. (Hearing Tr. at 34-35.) The video does reveal a slight wobble by Simmons as the trooper moved the beam of his flashlight on the ground over and around Simmons' feet. (State's Ex. 2 at 1:58:35-1:59:06.) But the NHTSA manual specifically excludes "slight tremors of the foot or body" as a clue, and though Hurlbert would not admit that Simmons passed the test, he admitted that even if the slight wobble constituted swaying, more than a single "clue" is required to consider the test a "fail." (State's Ex. 1 at 68; Hearing Tr. at 34-35, 59-60.)

{¶ 8} Hurlbert testified that he observed five "clues" during the WAT test and specified four during his testimony—(1) that Simmons disobeyed instructions by moving while listening to instructions, (2) that he did not touch heel to toe on each step, (3) that he took 11 rather than 9 paces during the walk after the turn, and (4) that he stopped during the test. (Hearing Tr. at 36-37.) Video reveals one clue the trooper mentioned and one that he did not specifically mention. It shows that Simmons did take 11 steps rather than the instructed 9 and that he lost his balance while executing the turn and stepped off the line. (State's Ex. 2 at 2:00:10-49.) The video does not confirm the existence of the other three clues mentioned by the trooper. The video shows that Simmons did not move while listening to the instructions and only moved after he asked for clarification of the instructions and while observing the *second* demonstration by the officer. (State's Ex. 2 at 1:59:20-2:00:10.) The video does not reveal that Simmons stopped at any point during the WAT test unless his loss of balance and misstep during the turn portion of the test is double counted as both a stop and a step from the line. (State's Ex. 2 at 2:00:32-37.) The video is not filmed from an angle that shows whether all of Simmons' steps were heel to toe. (State's Ex. 2 at 2:00:10-49.)

{¶ 9} Following Simmons' completion of the WAT test, Hurlbert informed him that he was under arrest for operating a vehicle while intoxicated ("OVI") and read the *Miranda*[1] warnings. (State's Ex. 2 at 2:00:49-2:01:28.) Once he was handcuffed and under arrest, Hurlbert transported him to the Reynoldsburg Police Department where Simmons agreed to submit to a test of his urine. (Tr. at 39-40.)

---

[1] *Miranda v. Arizona*, 784 U.S. 436 (1966).

{¶ 10} After the evidence, we have recounted above what was presented to the trial court in a live hearing, the judge took a recess and then rendered an oral decision in relevant part as follows:

> The defendant initially passed the trooper going 57 miles per hour in a 35 miles per hour zone, approximately 12 [sic] miles over the limit. The trooper, noting that violation, turned on the defendant, sped up at a fast rate, obviously he had to [] catch him from behind, and this was approximately 1:42 in the morning.
>
> At some point in time, obviously the defendant increased his speed and both the trooper, according to the testimony of the trooper, and the defendant were going approximately 90 miles an hour. At that point the trooper turned on his lights and siren. Thereafter, the defendant after a very short period of time, turned into a school lot. The defendant, I would note, was not charged with any type of fleeing or failure to comply.
>
> The trooper approached the defendant's vehicle, spoke with the defendant, smelled a strong odor of marijuana coming from the vehicle as well as on the defendant. I might note that there was a second individual in the passenger seat, also smelled of marijuana, and eventually he was taken out of the car, where he admitted to the trooper that he had smoked marijuana within the last hour or two.
>
> Upon request, the defendant did provide the trooper with his license, insurance and registration without difficulty and also informed the trooper that he was driving his mother's vehicle. The defendant stepped from the vehicle without difficulty. * * *
>
> The trooper did testify that at no time during his conversation with the defendant did he have any type of slurred speech. The defendant walked with the trooper back to the trooper's vehicle. While inside the trooper's vehicle, the trooper had the defendant do some nonstandardized tests, one being the alphabet test, which can be heard on the video; the defendant passed. He was given a second nonstandardized test, counting backwards; the defendant passed.
>
> The trooper testified that he did give the defendant an HGN test. However, that could not be seen on the video and the Court does not give that very much weight. Also the trooper testified that the defendant was given another nonstandardized test, touching fingers. Again, that was not seen on the video, and the Court does not give that very much weight.

The defendant was given a one--leg stand, which he passed. I believe the trooper indicated there was one clue. He would not actually say that he passed it but he did. Now, the one test, which was the walk-and-turn test, now the trooper indicated there was five clues on the walk-and-turn, I believe. * * *

* * * I did not see -- personally see a lot of violations. I thought, according to my vision -- of course, this is a very subjective test, I believe. As far as- -I thought he was very steady on his feet. I did not see any unusual physical issues with the defendant. The heel-to-toe violations, I guess I'd have to rely on the trooper telling me that, although you can't really see it on the video whether or not how egregious those were. I did not see any swaying. I did not see him raise his arms more than six inches off of his side. I did not see that.

* * *

In this case, there was nonstandardized testing. As I indicated there was an alphabet test that was passed; and the numbers test, which was passed. Since the trooper chose to give the nonstandardized in addition to the standardized tests, in my opinion he must live with the results. Insomuch that the defendant passed the nonstandardized tests of which you could either hear on the video -- again, I'm not taking much weight to the ones, including the HGN which he passed, by the way, and the fingers test violation, which we could not see either one on the video, I'm not giving those much weight.

* * * [T]aking the totality of the circumstances together, I do not find probable cause for the arrest in this case. I do find there was a reasonable articulable suspicion to stop but not probable cause to arrest, taking the totality of the circumstances of what I saw and what I've heard, as well as the exhibits.

(Hearing Tr. at 69-73.) The trial court memorialized its findings (that the initial stop was justified but there was no probable cause to arrest Simmons for OVI) in a summary handwritten entry the same day. (Mar. 14, 2018 Entry.)

{¶ 11} The State timely appealed arguing that "the trial court's ruling on the motion to suppress has rendered the State's proof with respect to the pending charge of R.C. 4511.19(A)(1)(J)[sic], so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." (Mar. 14, 2018 Notice of Appeal at 2.) See also Crim.R. 12(K); R.C. 2945.67(A).

## II. ASSIGNMENT OF ERROR

{¶ 12} The State assigns a single error for our review:

> The trial court erred in finding that there was no probable cause to arrest the Defendant for operating a vehicle under the influence of drugs.

## III. DISCUSSION

{¶ 13} "The United States Supreme Court recognizes three categories of police-citizen interactions: (1) a consensual encounter, which requires no objective justification, (2) a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity, and (3) a full-scale arrest, which must be supported by probable cause." (Citations omitted.) *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 13 (10th Dist.), citing *Florida v. Bostick*, 501 U.S. 429 (1991); *Brown v. Illinois*, 422 U.S. 590 (1975); *Terry v. Ohio*, 392 U.S. 1 (1968). It was essentially undisputed in this case that Hurlbert, who clocked Simmons at 57 m.p.h. in a 35 m.p.h. zone, even before he initiated pursuit without using siren or lights until after pursuing Simmons for quite awhile, had the requisite reasonable suspicion to stop Simmons for speeding. R.C. 4511.21. The question that was disputed and that continues to be disputed in this appeal is whether Hurlbert had probable cause to arrest Simmons for operating a vehicle while under the influence of drugs. R.C. 4511.19(A)(1)(j).

{¶ 14} "An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent [person] in believing that an offense has been committed.' " *Miller v. Sanilac Cty.*, 606 F.3d 240, 248 (6th Cir.2010), quoting *Henry v. United States*, 361 U.S. 98, 102 (1959); *see also Mott v. Mayer*, 524 F.Appx. 179, 187 (6th Cir.2013). Generally, in reviewing a decision on a motion to suppress, we afford deference to the trial court's factual determinations and review its recitation of historical facts for "clear error," but we review statements of law and the application of law to facts de novo. *See, e.g.*, *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 15} In this case, the trial court's oral explanation of its decision illustrates that it was not giving much weight to tests with a visible component but that were conducted off-camera (i.e., the finger touching, the HGN, and the LOC tests). (Hearing Tr. at 71-73.) This is well within the trial court's discretion as factfinder. The trial court correctly noted that,

out of the remaining four tests administered, Simmons passed three. (Hearing Tr. at 71.) It also noted that, despite the officer's testimony, the video appears to show that Simmons performed fairly well on the WAT test. (Hearing Tr. at 71-72.) That is, the video shows only two clues—that Simmons did take 11 steps rather than the instructed 9 and that he lost his balance while executing the turn and stepped off the line. (State's Ex. 2 at 2:00:10-49.) The video's angle does not show whether or not Simmons adequately stepped heel to toe on every step, it does not show that Simmons stopped during the test except insofar as he lost his balance at one point, and it shows that he did not move during the instructions and only adjusted his position after asking for clarification and watching a *second* demonstration by the officer. (State's Ex. 2 at 1:59:20-49.) Although the trial court did not break down its analysis of the video in the manner here, it found, consistent with the evidence presented, that Simmons passed three out of four tests for which there is independent corroborating video evidence, and, even on the fourth test, he did not appear to perform as badly as the officer suggested in his testimony. (Hearing Tr. at 71-73.) We do not discern an abuse of discretion in the trial court's treatment of roadside test evidence before it.

{¶ 16} The trial court also did not abuse its discretion in considering the other evidence before it. It noted that Hurlbert, without activating his emergency lights, executed a U-turn and rapidly pursued Simmons at 1:40 a.m., which provoked flight by Simmons. (Hearing Tr. at 70.) Consistent with the trial court's implication, drivers of emergency vehicles are only excused from violating traffic laws, such as speed restrictions (R.C. 4511.21) and marked lanes (R.C. 4511.33), when the emergency vehicle is "displaying at least one flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and if the driver of the vehicle is giving an audible signal by siren, exhaust whistle, or bell." R.C. 4511.041. Among other important safety purposes, that statute exists to prevent the type of confusion Simmons testified to in this case. It was fair and reasonable for the trial court not to have accorded significant weight to the erratic driving by Simmons immediately preceding the stop. (Hearing Tr. at 70.) Nor did the trial court abuse its discretion in finding, consistent with the evidence developed during the hearing, that Simmons' movements were normal and that he complied with all instructions smoothly. (Hearing Tr. at 38, 48-49, 70.) The trial court's finding that Hurlbert smelled marijuana in the car and on Simmons' person were consistent with the trooper's testimony as was the mitigating finding that the passenger

smelled strongly of marijuana and admitted to having smoked recently.  (Hearing Tr. at 21-23, 70; State's Ex. 2 at 1:49:30-1:50:24.)

{¶ 17}  Having concluded that the trial court did not abuse its discretion or commit clear error in finding facts from the evidence presented, the next question is whether, based on the facts as the court found them, there was probable cause to arrest Simmons for operating a vehicle while under the influence of marijuana.  We agree with the trial court that the evidence did not objectively rise to the requisite level of suspicion.  Simmons only drove erratically when provoked, spoke and moved smoothly during the stop, and had no difficulty complying with the officer's instructions.  (Hearing Tr. at 38, 48-49, 70; State's Ex. 2 at 1:41:22-1:44:30.)   Although Simmons and the car smelled of marijuana, it is reasonable to conclude that the odor may have transferred from the passenger because, by the trooper's own exclamation on the video, the passenger in the car smelled "strong[ly]" of marijuana and had admitted to having smoked recently.  (State's Ex. 2 at 1:49:30-1:50:24.)

{¶ 18}  Hurlbert subjected Simmons to seven different roadside tests, HGN, LOC, finger touching, alphabet, counting, OLS, and WAT.  (Hearing Tr. at 24-37, 59-60; State's Ex. 2 at 1:47:18-1:48:30, 1:56:15-1:57:10, 1:58:35-1:59:06, 1:59:20-2:00:49.)  By even the trooper's estimation, Simmons passed the majority of them.  (Hearing Tr. at 24-37, 59-60, 70-71.)  Of those tests for which there is video corroboration (alphabet, counting, OLS, and WAT), Simmons passed all but one.  (Hearing Tr. at 31-37, 59-60; State's Ex. 2 at 1:56:30-1:57:10, 1:58:35-1:59:06, 2:00:10-49.)  And even on the WAT test which Simmons did not pass, he performed relatively well.  *See supra* at ¶ 8, 15.  Although the trooper seemed to take it as established that the tests he administered are capable of providing evidence as to whether a driver is impaired by marijuana, no competent evidence of that was presented during the hearing.  The State did not attempt to qualify the trooper as an expert in offering such testimony and the NHTSA manual introduced by the State to substantiate the reliability of the tests addresses only their reliability in detecting BAC.[2]  (State's Ex. 1 in passim.)   Under the totality of the circumstances as determined objectively from the evidence presented to and found credible by the trial court, we agree with the trial court's finding that there was no probable cause to arrest Simmons for OVI.

---

[2] State's Exhibit 1 never defines the acronym "BAC" but from context we understand it to mean either "blood alcohol content" or "breath alcohol content."

{¶ 19} The State argues that the trial court acted improperly in "discount[ing] the results of the walk-and-turn test on the basis of its own subjective evaluation of a defendant's performance." (Aug. 23, 2018 State's Reply Brief at 4.) We agree that some of our prior cases suggest that it is improper for a trial court to ignore NHTSA-defined "clues" in a defendant's performance of a sobriety test in order to conclude that a defendant "passed" the test when, in fact, he did not. *Columbus v. Weber*, 10th Dist. No. 06AP-845, 2007-Ohio-5446, ¶ 24; *State v. Morgan*, 10th Dist. No. 05AP-552, 2006-Ohio-5297, ¶ 35. But when there is video evidence of the defendant's performance, a court is entitled as a factfinder to consider whether the defined "clues" were actually present; it is not required to believe an officer's testimony about the presence of clues when the video shows otherwise. *Upper Arlington v. Wissinger*, 10th Dist. No. 13AP-922, 2014-Ohio-1601, ¶ 30 (limiting *Morgan* and holding that the trial court need not "blindly defer to an officer's testimony" and that the "important role the trial court plays in evaluating the weight and credibility of the evidence before it" entitles it to make its own review of video evidence). Moreover, the trial court did not reach the result it reached in this case by concluding that Simmons passed the WAT test. (Hearing Tr. at 69-73.) It reached the conclusion that there was no probable cause to arrest for OVI because Simmons performance on the WAT was one factor within the totality of the circumstances and the other circumstances in this case (passage of numerous other roadside tests, relative steadiness throughout all the tests, the fluency of Simmons' speech and movements throughout the stop, the fact that the marijuana odor could be explained by the presence of the strongly smelling passenger, and the fact that Simmons denied recent consumption of marijuana) all weighed against the suspicion that he was intoxicated. *Id.* We see neither an abuse of factfinding discretion nor an error of law in that conclusion.

{¶ 20} The State's sole assignment of error is overruled.

## IV. CONCLUSION

{¶ 21} The trial court's factual conclusions were consistent with and supported by the video and testimonial evidence presented during the suppression hearing. Based on the totality of the circumstances as the trial court found them, there was no probable cause

to arrest Simmons for operating a vehicle while under the influence of marijuana.  The judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

KLATT, P.J., and HORTON, J., concur.

————————————